UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CONOR DWYER REYNOLDS,

                Plaintiff,

    v.

CITY OF ROCHESTER, *et al.*,

                Defendants

**DECISION AND ORDER**

6:23-CV-06506 FPG CDH

---

## INTRODUCTION

Plaintiff Conor Dwyer Reynolds ("Plaintiff") is the former Executive Director of the City of Rochester ("City") Police Accountability Board ("PAB"). (Dkt. 28 at ¶ 14). Plaintiff has sued defendants the City, Shani Wilson ("Wilson"), Duwaine Bascoe, Deborah Campbell, Drorah Setel, Matthew Nickoloff, and Natalie Banks (collectively "Defendants"), for 16 separate claims arising out of his tenure as Executive Director of the PAB, including causes of action for discrimination, retaliation, defamation, deprivation of property and liberty (stigma-plus) under the 14th Amendment, and intentional infliction of emotional distress. (Dkt. 28).

Presently before the Court are Plaintiff's motions to quash two non-party subpoenas (respectively the "Yale Subpoena" and the "Cornell Subpoena") served by Defendants on Yale University ("Yale") and Cornell University ("Cornell"). (Dkt. 50; Dkt. 62). Also before the Court is Plaintiff's request that the Court sanction Defendants because of their conduct in connection with the issuance of the Cornell Subpoena. (Dkt. 64 at 14).

For the reasons that follow, Plaintiff's motion to quash the Yale Subpoena is denied without prejudice. Plaintiff's motion to quash the Cornell Subpoena is granted. The Court denies Plaintiff's request that it sanction Defendants.

## BACKGROUND

Plaintiff was the Executive Director of the PAB from October 16, 2020, until his termination on November 17, 2022. (Dkt. 28 at ¶¶ 79, 492). Plaintiff alleges that while he was employed as Executive Director, he was sexually harassed by defendant Wilson, then-Chair of the PAB. (*See* Dkt. 52 at 2). Plaintiff further alleges that he was subject to retaliation by Wilson for declining her advances, and by Wilson and the other individual defendants (who are other PAB board members and employees) for reporting the harassment to the PAB and later posting an essay online about his experience of harassment and retaliation. (*See id.* at 2-3).

This case was referred to Magistrate Judge Marian W. Payson by District Judge Frank P. Geraci, Jr. for all pretrial matters excluding dispositive motions, pursuant to 28 U.S.C. § 636(b), and the referral was subsequently reassigned to the undersigned following Judge Payson's retirement. (Dkt. 11; Dkt. 67).

On October 1, 2024, Defendants' counsel advised Plaintiff's counsel that Defendants intended to serve a third-party subpoena on Yale. (Dkt. 51 at ¶ 8). Plaintiff attended Yale as a law student and worked there as a clinical lecturer prior to his employment at the PAB. (Dkt. 59-2). According to defense counsel, on October 1, 2024, she both "emailed the anticipated subpoena to Plaintiff's counsel and sent the subpoena to support staff to be served." (Dkt. 59-1 at ¶ 18). "The process server

picked up the [Yale Subpoena] from City Hall on October 1, 2024." (*Id.* at ¶ 20). Less than two hours after receiving notice, Plaintiff's counsel advised Defendants' counsel that Plaintiff opposed service of the subpoena. (Dkt. 51 at ¶ 9). On October 2, 2024, Defendants' counsel advised Plaintiff's counsel that the Yale Subpoena had been served. (*Id.* at ¶ 10). Plaintiff's counsel "sent a letter to Yale on October 2, 2024, requesting that the school 'not comply with the Subpoena until the Court has issued an order on our forthcoming motion to quash.'" (*Id.* at ¶ 13).

The Yale Subpoena is addressed to Yale at its campus in New Haven, Connecticut. (Dkt. 79-3 at 2). It requires that documents be produced to a location in Brooklyn, New York. (*Id.* at 3). Plaintiff moved to quash the Yale Subpoena on October 15, 2024. (Dkt. 50). Defendants have opposed the motion. (Dkt. 59).

On November 1, 2024, Defendants' counsel advised Plaintiff's counsel that Defendants intended to serve a third-party subpoena on Cornell. (Dkt. 63 at ¶ 5). Plaintiff currently works at Cornell Law School as an adjunct professor of law. (Dkt. 63 at ¶ 2). Defendants' counsel objected to service of the Cornell Subpoena on November 1, 2024. (*Id.* at ¶ 8).

Defendants served the Cornell Subpoena on November 7, 2024. (*Id.* at ¶ 15). The Cornell Subpoena is addressed to Cornell at its campus in Ithaca, New York. (Dkt.79-2 at 2). It requires that documents be produced to Rochester City Hall. (*Id.*). Cornell has lodged objections to the Cornell Subpoena. (Dkt. 63 at ¶ 20; Dkt. 63-5; Dkt. 68-1 at ¶ 15). Plaintiff moved to quash the Cornell Subpoena on November 20, 2024. (Dkt. 62). Defendants have opposed this motion, as well. (Dkt. 68).

The Court heard oral argument on January 31, 2025, with respect to both motions to quash. (Dkt. 73). The Court subsequently ordered the parties to submit supplemental briefing on the issue of whether this Court has authority to hear the motions to quash under Federal Rule of Civil Procedure 45(d)(3). (Dkt. 76). The parties' supplemental briefs were filed on April 2, 2025. (Dkt. 77; Dkt. 78; Dkt. 79).

## DISCUSSION

### I.    The Court's Authority to Hear the Instant Motions

Federal Rule of Civil Procedure 45(d)(3) limits the power to quash or modify a subpoena to "the court for the district where compliance is required." Fed. R. Civ. P. 45(d)(3)(A)-(B); *see also JMC Rest. Holdings, LLC v. Pevida*, No. 14 CIV. 6157 WFK VMS, 2015 WL 2240492, at *3 (E.D.N.Y. May 12, 2015) ("the court for the district where compliance is required is the proper venue for a motion to compel"). The moving party "bear[s] the burden to demonstrate that the [court in which the motion to quash is filed] is the court of compliance." *Cleary v. Kaleida Health*, No. 1:22-CV-00026(LJV)(JJM), 2024 WL 1297708, at *4 (W.D.N.Y. Mar. 27, 2024).

The parties agree that this District is not "the district where compliance is required" with respect to the Yale Subpoena. Plaintiff has further conceded that his motion to quash the Yale Subpoena "should be dismissed without prejudice and refiled in another district." (Dkt. 78 at 3). The Court accordingly denies the motion to quash the Yale Subpoena (Dkt. 50) without prejudice to refiling in the appropriate district.

- 4 -

As to the Cornell Subpoena, the parties disagree about whether the district of compliance is the Northern District of New York (where Cornell is located) or this District (where the Cornell Subpoena instructs that the documents be produced).  For the reasons that follow, the Court agrees with Plaintiff that this District is the district of compliance as to the Cornell Subpoena, and that the Court accordingly has the authority under Rule 45(d)(3) to hear and decide Plaintiff's motion to quash the same.

"When non-party subpoenas involve the production of documents from a business entity, there appears to be some dispute about where 'compliance' actually occurs—where the subpoena directs the delivery of documents, or the residence of the non-party recipient (*i.e.*, the place from which the documents are produced)." *Cleary*, 2024 WL 1297708, at *3. While the Second Circuit has not resolved this issue, several district courts within the Second Circuit have followed the latter approach.  *See id.* (collecting cases).  Other district courts have followed the former approach and held that "for purposes of a Rule 45(d)(2) or 45(d)(3) motion, the court or district 'where compliance is required' is determined by the location or 'place' for compliance identified on the subpoena[.]" *CSS, Inc. v. Herrington*, 354 F. Supp. 3d 702, 709 (N.D. Tex. 2017); *see also Simmons v. Fervent Elec. Corp.*, No. 14-CV-1804 ARR MDG, 2014 WL 4285762, at *1 (E.D.N.Y. Aug. 29, 2014) ("Since the subpoena at issue requires the deponent's attendance in Manhattan, plaintiff's motion is properly brought in the United States District Court for the Southern District of New York."). "Having considered both views, this Court sides with the courts that look to the face [of] the

subpoena." *Henry Schein, Inc. v. Drea*, No. 4:21-CV-00192 RGE HCA, 2022 WL 18584628, at *2 (S.D. Iowa May 31, 2022).

The Court's analysis starts with and rests primarily upon the text and structure of Rule 45. Rule 45(a)(1)(A)(iii) permits an issuing party to "command each person to whom it is directed to do the following at a specified time and place . . . produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control." Rule 45(c) in turn defines the "place of compliance" for a subpoena. It provides that "[a] subpoena may command . . . production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(2)(A).

In other words, Rule 45 itself defines the "place of compliance" as the location where the production of documents is commanded. *See Am. Plan Administrators v. S. Broward Hosp. Dist.*, No. 21-cv-2663(KAM)(TAM), 2021 WL 6064845, at *2 (E.D.N.Y. Dec. 22, 2021) ("The place of compliance for a non-party subpoena seeking documents, electronically stored information and tangible things is a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." (quotations omitted)); *JMC Rest. Holdings*, 2015 WL 2240492, at *2 ("The subpoena may specify a place of compliance that is within 100 miles of where the person resides, is employed, or regularly transacts business in person." (quotations and alterations omitted)). The Advisory Committee Notes are consistent with the Rule's language, explaining that, "[t]o protect local nonparties, local resolution of

disputes about subpoenas is assured by the limitations of Rule 45(c) and the requirements in Rules 45(d) and (e) that motions be made in <u>the court in which compliance is required under Rule 45(c)</u>." Fed. R. Civ. P. 45, Advisory Committee Notes to 2013 Amendments (emphasis added).  Nothing in the text or structure of Rule 45 supports the conclusion that the place of compliance is properly interpreted to refer to the location where the documents, electronically stored information, or tangible things are located, as opposed to where they are commanded to be produced.

The courts that have held to the contrary have been primarily concerned with situations in which the party issuing the subpoena improperly designated a place for compliance outside the 100-mile radius proscribed by Rule 45(c).  *See, e.g., Raap v. Brier & Thorn, Inc.*, No. 17-MC-3001, 2017 WL 2462823, at *3 (C.D. Ill. July 7, 2017) ("The purpose of protecting nonparties is defeated if a party could demand compliance in a location more than 100 miles from where the nonparty resides, is employed, or regularly transacts business in person and still require the nonparty to adjudicate a dispute over that subpoena in a distant forum."). The Court is not insensitive to this concern.  But it cannot alone justify interpreting "the district where compliance is required" in a manner inconsistent with Rule 45's text. *See U.S. ex rel. Eisenstein v. City of N.Y.*, 540 F.3d 94, 97 (2d Cir. 2008) ("When interpreting a rule of procedure, [the court] review[s] the text for its plain meaning.") (quotation omitted), *aff'd*, 556 U.S. 928 (2009).

- 7 -

In any event, no such concern is present here, where the place of compliance identified on the face of the subpoena (Rochester City Hall) is within 100 miles of Cornell's main campus in Ithaca, New York.  *See HI.Q, Inc. v. ZeetoGroup, LLC*, No. MC 22CV1440-LL-MDD, 2022 WL 17345784, at *7 (S.D. Cal. Nov. 29, 2022) ("Case law suggests that making the 'place of compliance' determination may vary based upon the type of motion filed and the facts available to the reviewing court.").  This District was properly designated as the place for compliance with the Cornell Subpoena under Rule 45(c)(2).  It defies logic to nevertheless conclude that this Court lacks the authority to hear Plaintiff's motion to quash the Cornell Subpoena under Rule 45(d)(3).  Accordingly, the Court will not deny the motion to quash the Cornell Subpoena on this basis, and will consider the merits of the parties' respective arguments.

## II.    <u>Plaintiff's Motion to Quash the Cornell Subpoena</u>

### A.    <u>Standing</u>

"The party moving to quash a subpoena must have standing."  *Strike 3 Holdings, LLC v. Doe*, 337 F. Supp. 3d 246, 251 (W.D.N.Y. 2018).  "The general rule is that a party does not have standing to object to a subpoena issued to a third-party . . . unless the movant has alleged some personal privacy right or privilege to the documents sought."  *McNerney v. Archer Daniels Midland Co.*, 164 F.R.D. 584, 587 (W.D.N.Y. 1995).  Accordingly, "[a] party lacks standing to challenge subpoenas issued to non-parties on the grounds of relevancy or undue burden."  *Cleary v. Kaleida Health*, No. 1:22-CV-00026 (LJV) (JJM), 2024 WL 4901952, at *16 (W.D.N.Y. Nov.

27, 2024) (quoting *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11 CIV. 1590 LTS HBP, 2013 WL 57892 (S.D.N.Y. Jan. 4, 2013)). However, once standing has been established, "the next inquiry requires weighing the relevance or probative value of the documents being sought against the privacy interests asserted." *Silverstone Holding Grp., LLC v. Zhongtie Dacheng (Zhuhai) Inv. Mgmt. Co.*, 650 F. Supp. 3d 199, 203 (S.D.N.Y. 2023) (quotation and alteration omitted).

Here, Defendants argue that four out of the six items sought by the Cornell Subpoena do not constitute "employment records," and so Plaintiff lacks a personal right for the purposes of standing. (Dkt. 68 at 3-4.). As an initial matter, the Court disagrees that any of the items sought by the Cornell Subpoena are not properly considered "employment records." All the items in question are related to the circumstances of Plaintiff's hiring and the terms and conditions of his employment, and are thus "employment records" under any reasonable definition. "Allowing [Plaintiff] to proceed with his objection due to the personal and private nature of the data is consistent with law in this circuit." *Gilead Scis., Inc. v. Khaim*, 755 F. Supp. 3d 285, 293 (E.D.N.Y. 2024).

Moreover, "the question of standing is beside the point where the objection to the subpoena is on relevance or proportionality[.]" *Allstate Ins. Company v. All Cnty., LLC*, No. 19-CV-7121-WFK-SJB, 2020 WL 5668956, at *2 (E.D.N.Y. Sept. 22, 2020). "Even if [Plaintiff] has no standing . . . the Court may nevertheless exercise its inherent authority [under FRCP 26(b)(2)(C)] to limit irrelevant or non-proportional discovery." *Hughes v. Hartford Life and Accident Ins. Co.*, 507 F. Supp. 3d 384, 405

(D. Conn. 2020); *see also* Fed. R. Civ. P. 26(b)(2)(C) ("On motion or on its own, the court must limit the frequency or extent of discovery . . . if it determines that . . . the proposed discovery is outside the scope permitted by Rule 21(b)(1)."). In other words, "even if [Plaintiff] has no standing, the Court certainly does," in light of its "broad discretion to manage the manner in which discovery proceeds." *Gilead Scis.*, 755 F. Supp. 3d at 294 (quotations omitted).

For these reasons, the Court will not deny Plaintiff's motion to quash the Cornell Subpoena based on lack of standing.

## B.    <u>Notice</u>

The Court next addresses Plaintiff's argument that the Cornell Subpoena should be quashed on the independent ground that Defendants failed to comply with the notice requirements of Rule 45.  (*See* Dkt. 64 at 10-11).  Under Rule 45(a)(4), "[i]f [a] subpoena commands the production of documents, electronically stored information, or tangible things . . . then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party."  Fed. R. Civ. P. 45(a)(4).  This requirement is intended, in part, "to afford the other parties an opportunity to object to the production [of the documents sought by the subpoena]." *Schweizer v. Mulvehill*, 93 F. Supp. 2d 376, 411 (S.D.N.Y. 2000).  The purpose of Rule 45(a)(4), however, is "not to forestall the service of the subpoena."  *Sherman v. Fivesky, LLC*, No. 19-CV-8015 (LJL), 2020 WL 5105164, at *5 n.3 (S.D.N.Y. Aug. 31, 2020).  Moreover, "[a] party cannot simply object to a subpoena served on a non-party, but rather must move to quash or seek a protective order."  *United States ex rel. Ortiz*

*v. Mount Sinai Hospital*, 169 F. Supp. 3d 538, 544 (S.D.N.Y. 2016) (quotation omitted).

The Court finds Plaintiff's argument that notice of the subpoenas did not comply with Rule 45 unavailing with respect to the Cornell Subpoena. Defendants shared a copy of the Cornell Subpoena with Plaintiff on November 1, 2024, and did not send it out for service until on or about November 7, 2024. (Dkt. 63 at ¶¶ 5, 15; Dkt. 64 at 11). Plaintiff argues that the parties were still "in the process of conferring when the subpoena was issued." (Dkt. 64 at 10). However, Plaintiff has not shown how six days of notice did not afford him adequate notice and an opportunity to move to quash.

While Plaintiff did object in writing shortly after receiving notice, a written objection, alone, did not preclude Defendants from ultimately issuing the Cornell Subpoena. *See Mount Sinai Hospital*, 169 F. Supp. 3d at 544. Plaintiff argues that, once he objected, Defendants were then required to move for an order compelling production under Rule 45(d)(2)(B)(i). (*See* Dkt. 64 at 10). However, Rule 45(d)(2)(B)(i), by its own language, only applies to objections made by the "person commanded to produce [the] documents." Fed. R. Civ. P. 45(d)(2)(B)(i). Plaintiff has cited no cases in which a court has held that Rule 45(d)(2)(B)(i) applies to objections served by a party and not by the subpoenaed third-party. Because the Cornell Subpoena was not directed to Plaintiff, his written objection did not make the Defendants' issuance of the Cornell Subpoena six days later inappropriate.

Accordingly, the Court finds no basis to quash the Cornell Subpoena due to lack of notice.

### C.  <u>Relevancy</u>

Having resolved these threshold issues, the Court turns next to the relevancy of the items sought by the Cornell Subpoena, as well as the proportionality of the requested discovery.  "The reach of a subpoena issued pursuant Fed. R. Civ. P. 45 is subject to the general relevancy standard applicable to discovery under Fed. R. Civ. P. 26(b)(1)."  *Syposs v. United States*, 181 F.R.D. 224, 226 (W.D.N.Y. 1998).  Rule 26(b)(1) provides in relevant part that, "[u]nless otherwise limited by court order . . . [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1).  "The Advisory Committee Notes to the 2015 Amendment clarifies that the rule was amended to 'encourage judges to be more aggressive in identifying and discouraging discovery overuse.'"  *Kochan v. Kowalski*, No. 19-CV-251W(SR), 2022 WL 3648023, at *1 (W.D.N.Y. Aug. 24, 2022).  In particular, "[t]he court is required to limit discovery that it determines 'is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive.'"  *Id.* (quoting Fed. R. Civ. P. 26(b)(2)(C)(i)).

Pursuant to Rule 45(d)(3), a court must quash or modify a subpoena that "requires disclosure of privileged or other protected matter . . . or subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv).  "Whether a subpoena imposes an undue burden depends on consideration of relevance, the need of the party for the

documents, the breadth of the document requests, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Kochan*, 2022 WL 3648023, at *1 (quotation omitted). "Another consideration is whether the requested information can be obtained from the parties themselves." *Id.* (quotation omitted). Subpoenas issued pursuant to Rule 45 "are clearly not meant to provide an end-run around the regular discovery process under rules 26 and 34." *Id.* (quotation omitted). If a party has access to documents, it is preferable for an opposing party to obtain them pursuant to Rule 34 rather than subpoenaing them from a non-party. *Burns v. Bank of America*, No. 03 CIV.1685 RMB JCFR, 2007 WL 1589437, at *14 (S.D.N.Y. June 4, 2007).

The party issuing a subpoena bears the burden of demonstrating that the information sought is relevant. *Kingsway Fin. Servs. Inc.*, 2008 WL 4452134, at *4. "Once the party issuing the subpoena demonstrates the relevance of the requested documents, the party seeking to quash the subpoena bears the burden of demonstrating that the subpoena is over-broad, duplicative, or unduly burdensome." *Id.*

Defendants seek to obtain from Cornell: (1) a position description or list of responsibilities for any/all employment position(s) held by Plaintiff at Cornell; (2) Plaintiff's job application to Cornell; (3) all applications received by Cornell for the positions that Plaintiff was hired for; (4) any/all evaluation materials related to Cornell's hiring of Plaintiff and determination of his salary; (5) paystubs or other documentation of compensation to Plaintiff for his employment at Cornell; and (6)

any Cornell policy or forms governing compensation for Plaintiff's employment. (Dkt. 63-3 at 2-3). Defendants state that these items will show the extent to which Cornell knew about Plaintiff's lawsuit, if at all, and how Cornell's knowledge of the lawsuit and its underlying facts affected the school's decision to hire Plaintiff and/or Plaintiff's compensation. (Dkt. 68 at 5). Defendants argue that this information is relevant because Plaintiff asserts causes of action for defamation and stigma-plus, alleging reputational harm and damage to his future employment prospects as a result of Defendants' actions and public statements. (*Id*. at 4).

The Court agrees with Defendants that Plaintiff's defamation claims alleging reputational harm, as well as his stigma-plus claim, have made aspects of his subsequent hiring by Cornell relevant in this case. *See, e.g., Celle v. Filipino Rep. Enterprises Inc.*, 209 F.3d 163, 177 (2d Cir. 2000) ("The gravaman of an action alleging defamation is an injury to reputation."); *Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 630-31 (2d Cir. 1996) (stigmatizing comments by the government support a stigma-plus claim "only when they denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession"). In particular, evidence that Plaintiff obtained his position at Cornell despite a competitive process, and that Cornell's hiring decision was not influenced by the events underlying this lawsuit, could support Defendants' defenses. Further, Plaintiff does not dispute that

information regarding his salary at Cornell is relevant to the issue of damages. (*See* Dkt. 63-2 at 5).

But the Court finds that Plaintiff likely has access to many of these items—specifically, items (1), (2), (5), and (6). Yet Defendants did not try to obtain these items through the regular discovery process. (*See* Dkt. 64 at 9). Defendants stated at oral argument that they believed subpoenaing the items from Cornell would be faster, even though it would have been reasonable to expect that Cornell, as it has done, would object to production of at least some of the documents. Accordingly, much of the Cornell Subpoena appears to be "an end-run around the regular discovery process." *See Kochan*, 2022 WL 3648023, at *1. Issuing a subpoena to a plaintiff's current employer, "if warranted at all, should be used only as a last resort," and a defendant "must obtain the information from less intrusive means where possible." *Warnke v. CVS Corp.*, 265 F.R.D. 64, 69-70 (E.D.N.Y. 2010). The Court therefore grants Plaintiff's motion to quash the Cornell Subpoena with respect to items (1), (2), (5), and (6). Defendants must seek these documents from Plaintiff pursuant to the regular discovery process before taking the extreme step of seeking them from his current employer via subpoena.

With respect to the remaining items (items (3) and (4)), the Court does find that Plaintiff is unlikely to have access to the other applications received by Cornell for the position that Plaintiff was hired to fill, as well as the evaluation materials related to Cornell's hiring of Plaintiff and its determination of his salary. However, the Court concludes that the information sought by these requests is overbroad and

disproportionate to the needs of the case.  Starting with item (3), there is likely to be little information in third parties' applications that directly bears on Cornell's assessment of Plaintiff's qualifications.  On the other hand, the requested applications are likely to contain sensitive, personal data for individuals who are not involved in this lawsuit.  Defendants made no effort to tailor this request to avoid disclosure of such information, or to limit the request to those portions of the applications that would—for example—demonstrate the applicants' qualifications as compared to Plaintiff.  *See, e.g., Doe v. Town of Greenwich*, No. 3:18CV01322(KAD), 2020 WL 2374963, at *6 (D. Conn. Feb. 28, 2020) (denying motion to compel response to request for production that was "overbroad as to subject matter, and would infringe the privacy interests of innocent third parties").

Turning to item (4), Defendants request:

Any/all notes, emails, evaluation sheets, recordings, letters, or other documentation from January 1, 2020 to October 31, 2024 regarding [i] the evaluation of Mr. Reynolds' application(s) for compensated position(s) or employment at Cornell University; [ii] any background or reference check(s) of Mr. Reynolds completed by or for Cornell University; [iii] Cornell University considering or deciding whether to interview him; [iv] any interviews conducted of Mr. Reynolds; [v] the decision to hire, employ, or contract with Mr. Reynolds for paid positions or employment at Cornell University; and [vi] the consideration, negotiation, or decision about Mr. Reynolds' compensation or pay in any paid position or employment at Cornell University from January 1, 2020 to October 31, 2024.

(Dkt. 63-3 at 2-3).  Initially, this request is overbroad with respect to time.  Plaintiff's stigma-plus claim is based on statements made in June, October, and November of 2022.  (*See* Dkt. 28 at ¶ 608).  His defamation claims similarly involve conduct in 2022.  (*See id*. at ¶¶ 306, 479-80, 558, 566, 574, 583, 591).  Defendants have not

articulated any theory by which evaluation materials from 2020 and 2021 could be relevant to Plaintiff's asserted reputational harm, given these facts.

Further, numerous courts have concluded that a request for "any and all" documents concerning a particular subject is "inherently overbroad." *Gropper v. David Ellis Real Est., L.P.*, No. 13 CIV. 2068 ALC JCF, 2014 WL 518234, at *4 (S.D.N.Y. Feb. 10, 2014) (collecting cases); *see also S.E.C. v. Ahmed*, No. 3:15CV675 (JBA), 2018 WL 1541902, at *2 (D. Conn. Mar. 29, 2018) ("A large portion of the document requests seek the production of "all documents" relating to various issues. Courts have often found that such blanket requests are overbroad and impermissible."). Again, Defendants have made no effort to tailor this request to items that are likely to contain information bearing on their defenses, and have "not adequately explained why this request is proportional to the needs of the case." *Optionality Consulting Pte. Ltd. v. Edge Tech. Grp. LLC*, No. 18-CV-5393 ALC KHP, 2022 WL 1977746, at *4 (S.D.N.Y. June 3, 2022).

For all these reasons, the Court grants Plaintiff's motion to quash the Cornell Subpoena.

## III.   <u>Sanctions</u>

Plaintiff also requests that the Court, pursuant to its inherent powers, sanction Defendants for issuing the Cornell Subpoena. (Dkt. 64 at 14-17). Plaintiff argues that the Cornell Subpoena is meritless and that Defendants "issued the subpoena in an attempted end-run around Plaintiff's objections[.]" (*Id.* at 15).

"When imposing sanctions pursuant to its inherent powers, the district court must find that the conduct in question was 'without a colorable basis' and undertaken in bad faith, i.e. 'motivated by improper purposes such as harassment or delay.'" *Murphy v. Bd. Of Educ. Of Rochester City Sch. Dist.*, 196 F.R.D. 220, 225 (W.D.N.Y. 2000) (quoting *Schlaifer Nance & Co. v. Est. of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999)). "[T]he Supreme Court has made clear that courts should impose sanctions pursuant to their inherent authority only in rare circumstances." *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 235 (2d Cir. 2020); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) ("Because of their very potency, inherent powers must be exercised with restraint and discretion.").

As discussed above, Defendants' issuance of the Cornell Subpoena did not violate the notice requirements under Rule 45. Moreover, several of the items that Defendants sought to obtain through the Cornell Subpoena are relevant, albeit more appropriately obtained from Plaintiff. The Court does not find that this is the rare case in which the imposition of sanctions under its inherent authority is appropriate. Accordingly, Plaintiff's request for sanctions is denied.

## CONCLUSION

For all these reasons, Plaintiff's motion to quash the Yale Subpoena (Dkt. 50) is denied without prejudice. Plaintiff's motion to quash the Cornell Subpoena (Dkt. 62) is granted, but Plaintiff's request for sanctions contained therein is denied.

SO ORDERED.

COLLEEN D. HOLLAND
United States Magistrate Judge

Dated: April 15, 2025
        Rochester, New York