UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CONOR DWYER REYNOLDS,

               Plaintiff,

    v.

CITY OF ROCHESTER, *et al.*,

               Defendants

**DECISION AND ORDER**

6:23-CV-06506 FPG CDH

---

### INTRODUCTION

Plaintiff Conor Dwyer Reynolds ("Plaintiff") is the former Executive Director of the City of Rochester ("City") Police Accountability Board ("PAB"). (Dkt. 28 at ¶ 14). Plaintiff has sued defendants the City, Shani Wilson, Duwaine Bascoe, Deborah Campbell, Drorah Setel, Matthew Nickoloff, and Natalie Banks[1] for 16 separate claims arising out of his tenure as Executive Director of the PAB, including causes of action for discrimination and retaliation. (Dkt. 28).

Presently before the Court is Plaintiff's motion for spoliation sanctions against Defendants and Defendants' counsel, the City of Rochester Law Department.[2] (Dkt. 92). For the reasons that follow, Plaintiff's motion is granted in part and denied in part.

---

[1]    Wilson, Bascoe, Campbell, Setel, Nickoloff, and Banks are hereinafter referred to collectively as the "Individual Defendants." The Individual Defendants and the City are hereinafter referred to collectively as "Defendants."

[2]    The City of Rochester Law Department represents all Defendants in this case.

## BACKGROUND

Plaintiff became the Executive Director of the PAB on October 16, 2020. (Dkt. 28 at ¶ 79). Plaintiff alleges that while he was employed by the PAB, he was sexually harassed by Wilson, then-Chair of the PAB, and subject to retaliation by Wilson for declining her advances. (*See id.* at ¶¶ 79-154). Plaintiff alleges that when he informed the PAB Board about Wilson's harassment of and retaliation against him, he was subject to further retaliation by Wilson and the other Individual Defendants, who are other former PAB Board members and employees. (*See id.* at ¶¶ 188-263).

After Plaintiff made his allegations of harassment and retaliation public, the City retained the law firm Constangy, Brooks, Smith & Prophete, LLP ("Constangy") in May of 2022 to conduct an investigation (the "Constangy Investigation" or "Investigation") into Plaintiff's allegations, as well as allegations that had been made against Plaintiff, and other complaints made by PAB personnel. (*Id.* at ¶ 375; Dkt. 93-4 at 4-5). The Constangy Investigation was conducted between May and October of 2022. (Dkt. 93-4 at 8). During the course of the Investigation, attorneys from Constangy solicited specific documents from at least some of the Individual Defendants and other witnesses. (Dkt. 94 at 8). Following the Investigation, Constangy prepared an investigative report dated November 16, 2022. (Dkt. 93-4 at 2; Dkt. 28 at ¶ 436). The report found that Plaintiff's claims of harassment and retaliation against Wilson were not substantiated and recommended terminating Plaintiff's employment with the PAB. (Dkt. 93-4 at 8, 11, 48, 54-55). Plaintiff was

terminated as Executive Director of the PAB effective November 17, 2022. (Dkt. 28 at ¶ 492).

Plaintiff first filed a complaint in connection with this matter with the New York State Division of Human Rights ("DHR") on May 9, 2022 (the "DHR Complaint"). (Dkt. 100-3; Dkt. 28 at ¶ 225). The DHR Complaint names the City as the "[e]ntity that discriminated against you" and lists Wilson alone as "individual people who discriminated against you." (Dkt. 100-3 at 3). The DHR Complaint describes Plaintiff's allegations of harassment and retaliation by Wilson and Plaintiff's efforts to raise these issues with the PAB Board. (*Id.* at 4-5). According to Plaintiff, he filed two Charges of Discrimination with DHR, DHR issued probable cause findings as to both charges, and Plaintiff received a Right to Sue letter. (Dkt. 28 at ¶ 22).

Plaintiff commenced the instant lawsuit on August 30, 2023. (Dkt. 1). The City and the Individual Defendants were named as defendants in the original complaint. (*Id.*). Plaintiff filed an amended complaint on March 5, 2024. (Dkt. 28).

On July 9, 2024, Plaintiff filed a motion to compel, wherein he first raised concerns about spoliation with the Court. (*See* Dkt. 37 at 10). Plaintiff represented in the motion to compel that counsel for both sides held a meet and confer on June 12, 2024, during which Defendants' counsel stated that she did not know which custodians' systems were being searched and with what search terms, or whether documents responsive to Plaintiff's discovery requests had been retained by the City, and that she "had no knowledge of any steps taken to retain documents after [the

City] was put on notice of potential litigation." (Dkt. 36 at ¶¶ 14-15). Plaintiff requested that the Court compel Defendants to disclose (1) all efforts that had been made to ensure that relevant materials were not deleted, including the date and recipients of all hold letters that had been issued, (2) whether any responsive materials had or may have been lost or destroyed and, if so, how those materials were lost or destroyed, and (3) all applicable document retention policies and whether those policies had been put on hold in relation to Plaintiff's claims. (Dkt. 37 at 10).

On August 12, 2024, Magistrate Judge Marian W. Payson, to whom this matter was then referred, directed the parties to continue to meet and confer and then provide supplemental submissions summarizing their conferral efforts. (Dkt. 41). On October 2, 2024, after reviewing the parties' supplemental submissions, Judge Payson directed the parties to continue conferring and provide further supplemental submissions regarding certain remaining disputes, including the question of when and to whom litigation holds were issued. (Dkt. 46 at 7). In his supplemental submission, Plaintiff stated that during an October 11, 2024 meet and confer, Defendants' counsel represented that no relevant documents had been deleted or destroyed but that she was still unaware whether any litigation holds had been issued "as she had not sent a litigation hold." (Dkt. 54 at 1).

On November 7, 2024, Judge Payson held a hearing regarding the parties' ongoing discovery disputes. (Dkt. 61). During the hearing, Defendants' counsel was asked whether the City had issued "litigation holds or preservation notices . . . to the Individual Defendants for any communications or documents that they may have

generated, maintained or had in their personal capacity." (Dkt. 93-5 at 5-6). Defendants' counsel stated that she did not know. (*Id.* at 6).

Following the hearing, Judge Payson entered an Order on November 8, 2024, directing Defendants, *inter alia,* to "disclose information relating to litigation holds or preservation notices provided to the individual defendants, including the date and recipients of any such holds or notices." (Dkt. 60). Defendants' counsel subsequently advised Plaintiff's counsel that litigation holds were issued to the Individual Defendants on November 8, 2024. (*See* Dkt. 93-6 at 2).

On January 8, 2025, the referral order in this case was transferred to the undersigned. (Dkt. 67).

Plaintiff filed the instant motion on November 17, 2025. (Dkt. 92). In the intervening year since the parties' dispute over the City's issuance of litigation holds, Plaintiff deposed the Individual Defendants, as well as non-party City employees, and elicited testimony regarding their searches for and preservation of documents and communications related to Plaintiff and the PAB. Plaintiff now moves for spoliation sanctions against all Defendants, arguing that "nearly all of the Individual Defendants engaged in spoliation" by deleting or failing to preserve documents and communications as a result of the City's failure to issue timely litigation holds. (Dkt. 94 at 12). Plaintiff asserts that "Defendants' duty to preserve evidence related to Plaintiff's sexual harassment allegations arose by the date on which he filed his initial complaint with [DHR], May 9, 2022." (*Id.* at 15-16). Plaintiff seeks terminating sanctions, or alternatively, to preclude Defendants from asserting certain affirmative

defenses related to the documents and communications that were allegedly spoliated and have the Court issue an adverse-inference instruction regarding spoliated evidence. (*Id.* at 26-28). Plaintiff also seeks attorney's fees and costs in connection with litigating the spoliation issue. (*Id.* at 28).

Defendants oppose Plaintiff's motion. (Dkt. 100). With respect to the Individual Defendants, Defendants argue that Plaintiff fails to show anything more than that some Individual Defendants inadvertently lost documents from their personal devices before their obligations to preserve arose. (*Id.* at 14). Defendants claim that the Individual Defendants besides Wilson did not have an obligation to preserve relevant evidence when the DHR Complaint was filed, but rather, such obligation arose when the instant lawsuit was filed. (*Id.* at 4, 8). Defendants do not explicitly address the City's belated litigation holds, but Defendants' counsel notes that she instructed the Individual Defendants at some point to "search their personal email accounts, phones, computers, electronic storage, and provide to the City all records reasonably related to [Plaintiff's] discovery demands."[3] (Dkt. 100-1 at ¶ 12). Defendants' counsel further notes that the City produced the "entire file" of the Constangy Investigation in discovery. (Dkt. 100-1 at ¶ 5). With respect to the City in particular, Defendants also argue that the DHR Complaint did not put the City on notice as to its obligation to preserve evidence, but that in any event, all City email

---

[3]    Defendants' counsel states that she emailed Plaintiff's counsel on March 18, 2024, that she would so instruct the Individual Defendants, and that she "did that" (Dkt. 100-1 at ¶ 12), but she does not say when she actually communicated this instruction to the Individual Defendants.

and Teams messages are automatically retained and archived for at least a decade. (Dkt. 100 at 13, Dkt. 100-1 at ¶ 9).

Plaintiff filed a reply. (Dkt. 106). The Court heard oral argument on Plaintiff's motion on March 5, 2026. (Dkt. 109). During oral argument, the Court directed Plaintiff to provide additional excerpts of deposition testimony as well as other documents. (*See id.*). Plaintiff submitted the requested deposition testimony excerpts on March 19, 2026. (Dkt. 110).

## DISCUSSION

### I.    Legal Standard for Spoliation Sanctions

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). "The determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge, and is assessed on a case-by-case basis." *Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 436 (2d Cir. 2001) (citation omitted).

Federal Rule of Civil Procedure 37(e), as amended in 2015, governs sanctions for the spoliation of electronically stored information ("ESI"). Specifically, the Rule applies when ESI "that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e).

In considering whether ESI "should have been preserved," the court must find, as a threshold matter, that the alleged spoliating party had an obligation to preserve the ESI at the time it was destroyed. *Karsch v. Blink Health Ltd.*, No. 17-CV-3880 (VM)(BCM), 2019 WL 2708125, at *18 (S.D.N.Y. June 20, 2019) (explaining this "first element of the traditional spoliation test . . . is also applicable to ESI under Rule 37(e)" (quotation omitted)). "The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Fujitsu*, 247 F.3d at 436; *see also Gill v. JUS Broad. Corp.,* No. 19-CV-4216 (DLI)(PK), 2023 WL 7412275, at *3 (E.D.N.Y. Nov. 9, 2023) ("Rule 37(e) incorporates the longstanding common law duty to preserve evidence[.]" (quotation omitted)). "Once the duty to preserve attaches, a party and its counsel must take reasonable steps to preserve relevant evidence.*" In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 341 F.R.D. 474, 495 (S.D.N.Y. 2022) (quotation omitted).

Courts have incorporated other threshold spoliation requirements when considering motions for Rule 37(e) sanctions. Chiefly, the "party seeking spoliation sanctions must necessarily show that the evidence at issue actually existed[.]" *Eur. v. Equinox Holdings, Inc.*, 592 F. Supp. 3d 167, 175-76 (S.D.N.Y. 2022) (quotation omitted). Additionally, "spoliation sanctions can be imposed only when the party seeking such sanctions demonstrates that relevant evidence has been lost." *Leidig v. Buzzfeed, Inc.*, No. 16 CIV. 542 (VM) (GWG), 2017 WL 6512353, at *7 (S.D.N.Y. Dec. 19, 2017) (quotation omitted) (finding spoliation sanctions were not appropriate with

respect to certain items that the moving party failed to allege had been lost); *see also Creighton v. City of N.Y.*, No. 12 CIV. 7454 (PGG), 2017 WL 636415, at \*18 (S.D.N.Y. Feb. 14, 2017) ("The spoliation doctrine is predicated on evidence actually existing and being destroyed.") (quotation and alterations omitted).

In sum, the party seeking spoliation sanctions has the burden of establishing the following threshold requirements: (1) "that relevant ESI existed"; (2) "that the ESI should have been preserved in anticipation of litigation"; (3) "that the allegedly spoliating party did not take reasonable steps to preserve the ESI"; and (4) "that the ESI cannot be entirely restored or replaced." *Chepilko v. Henry*, 722 F. Supp. 3d 329, 338 (S.D.N.Y. 2024) (quotation omitted). Once these threshold requirements have been satisfied, Rule 37(e) permits the court to impose sanctions pursuant to two subsections.

The first subsection, Rule 37(e)(1), "allows a court, upon a finding of prejudice to another party arising from the loss of ESI, to order 'measures no greater than necessary to cure the prejudice.'" *Hoffer v. Tellone*, 128 F.4th 433, 437 (2d Cir. 2025) (quoting Fed. R. Civ. P. 37(e)(1)). "Neither party has a burden of proving or disproving prejudice, and Rule 37(e) leaves judges with discretion to determine how best to assess prejudice in particular cases." *In re Keurig*, 341 F.R.D. at 495 (quotation omitted).

"An evaluation of prejudice from the loss of information necessarily includes an evaluation of the information's importance in the litigation." Fed. R. Civ. P. 37, Advisory Committee Notes to 2015 Amendment. "Courts within the Second Circuit

generally require that the lost evidence was not only probative, but also would affirmatively support the movant's claim to find prejudice." *Equinox Holdings*, 592 F. Supp. 3d at 178. Although "the Second Circuit has cautioned district courts against holding the prejudiced party to too strict a standard of proof regarding the likely contents of destroyed evidence," a party moving for spoliation sanctions must at least "come forward with plausible, concrete suggestions as to what the destroyed evidence might have been." *Moody v. CSX Transp., Inc.*, 271 F. Supp. 3d 410, 430 (W.D.N.Y. 2017) (quotations and alterations omitted). "While the moving party need not establish the loss of a smoking gun, it is sufficient if the existing evidence plausibly suggests that the spoliated ESI could support the moving party's case." *In re Keurig*, 341 F.R.D. at 495 (quotation and alteration omitted).

The second subsection, Rule 37(e)(2) "enumerates certain sanctions—namely, presuming that the lost information was unfavorable to the spoliating party, giving an adverse inference instruction to the jury, dismissing the action, or entering default judgment—that the court may impose 'only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation.'" *Hoffer*, 128 F.4th at 438 (quoting Fed. R. Civ. P. 37(e)(2)).

"The intent contemplated by Rule 37[(e)(2)] is not merely the intent to perform an act that destroys ESI but rather the intent to actually deprive another party of evidence." *Vega v. Broome Cnty.*, No. 9:21-CV-788 (BKS) (DJS), 2023 WL 6318919, at *13 (N.D.N.Y. Sept. 28, 2023) (quotation and alteration omitted); *see Hoffer*, 128 F.4th at 438. To prove such intent, the moving party must show "more than deprivation

due to a party's mere negligence or gross negligence, or even knowledge of such deprivation." *Milton v. Rehman*, No. 19-CV-2770 (JLR) (OTW), 2025 WL 2625966, at *12 (S.D.N.Y. July 31, 2025), *adopted*, 2025 WL 2624533 (S.D.N.Y. Sept. 11, 2025). However, "[p]roving such specific intent . . . frequently depends upon circumstantial evidence." *Hoffer*, 128 F.4th at 440. "[C]ourts in this Circuit have inferred an 'intent to deprive' through circumstantial evidence where the [loss of ESI] could not be credibly explained other than by bad faith." *Bursztein v. Best Buy Stores, L.P.*, No. 20-CV-00076 ATKHP, 2021 WL 1961645, at *8 (S.D.N.Y. May 17, 2021) (quotation omitted). Intent to deprive is determined by a preponderance of the evidence and is appropriately decided by the Court. *Hoffer*, 128 F.4th at 439, 441.

## II.    Application

### A.    The Individual Defendants' Alleged Inadequate Searches are Irrelevant to the Instant Motion

In his motion, Plaintiff asserts that several of the Individual Defendants, including Campbell, Banks, and Nickoloff, did not search for documents and communications in connection with either this lawsuit or the Constangy Investigation, or that their searches for documents and communications were inadequate. (*See, e.g., Dkt.* 94 at 13-14). While these assertions may illustrate Defendants' broader failures in meeting their discovery obligations, they ultimately do not bear on the issue of spoliation, because Plaintiff has failed to demonstrate that these alleged failures resulted in the destruction or loss of evidence.

"[I]t is not clear that . . . failing to search . . . even raises a spoliation issue, rather than a discovery issue that would have been better resolved with a motion to

compel." *Flanders v. Dzugan*, No. CIV.A. 12-1481, 2015 WL 5022734, at *6 (W.D. Pa. Aug. 24, 2015). A claim that another party failed to search for or produce documents does not, in itself, raise a spoliation issue because it does not necessarily suggest that any documents were destroyed—*i.e.*, one of the prerequisites for spoliation sanctions. *See Leidig*, 2017 WL 6512353, at *7 (distinguishing between inadequate production or failure to produce, on the one hand, and spoliation, on the other hand).

If certain defendants did not adequately respond to Plaintiff's discovery requests, then the proper recourse would have been to seek an order to compel production, and then, if necessary, to seek sanctions under Rule 37(b)(2)(A) for failing to comply with a discovery order. *See* Fed. R. Civ. P. 37(b)(2)(A); *Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, No. 08-CV-5023 CBA RLM, 2010 WL 3173785, at *3 (E.D.N.Y. Aug. 11, 2010) ("When parties and/or their counsel fail in their duty to conduct proper searches of ESI, sanctions may be appropriate, even where the misconduct involves late disclosure, as opposed to spoliation."). Even if the defendants' failures to search came to light late in the discovery process, as Plaintiff noted was the case during oral argument, that would not entitle Plaintiff to relief under Rule 37(e). Spoliation sanctions are specifically intended to remedy a party's destruction of evidence, not serve as a catch-all remedy for any discovery failure that is merely prolonged.

For these reasons, the Court does not find that Plaintiff's claims of inadequate searches are relevant to the instant motion, which is specifically addressed to the matter of spoliation, and thus does not address those claims below. The Court further

does not address whether Plaintiff would be entitled to any other form of relief in connection with the Individual Defendants' document production or defense counsel's supervision of thereof.

## B. Each Defendant's Alleged Spoliation Must Be Analyzed Individually

Plaintiff's motion seeks sanctions against each and every defendant, yet Plaintiff acknowledges that not all Defendants engaged in spoliation. (*See* Dkt. 94 at 12) ("nearly all of the Individual Defendants engaged in spoliation") (emphasis added). Defendants "urge the Court to remember that each Defendant is responsible for his/her/its behavior, and not that of others." (Dkt. 100 at 4). As a general matter, the Court agrees with Defendants. While under certain circumstances, conduct may be imputed to a party for purposes of spoliation sanctions, (1) Plaintiff has not suggested that any of those circumstances are present here, and (2) Plaintiff has not cited any authority that would nevertheless obviate Plaintiff's burden of establishing the elements of a spoliation claim as to each party against whom sanctions are sought.

Plaintiff appears to expect the Court to determine that sanctions are warranted against Defendants *en masse* for spoliation in the aggregate. However, such an approach has no grounding in Rule 37(e) or the applicable case law. To the contrary, spoliation, by nature, calls for a fact-intensive inquiry. *See Reilly v. Natwest Markets Grp. Inc.*, 181 F.3d 253, 267 (2d Cir. 1999). Where claims of spoliation involve different parties' personal devices and accounts, different forms of digital communications, and different times at which communications were lost or allegedly lost, the inquiry will necessarily be even more particularized.

The Court accordingly analyzes below whether spoliation sanctions are warranted as to each defendant based on their own individual facts and circumstances as presented.

### C. The DHR Complaint Did Not Trigger an Obligation to Preserve on Behalf of Every Defendant

One particular issue where Plaintiff improperly lumps all Defendants together is with respect to the obligation to preserve. "Because [Rule 37(e)] does not apply when information is lost before a duty to preserve arises, courts frequently need to decide when the duty of preservation arose." *Doubleline Cap. LP v. Odebrecht Fin., Ltd.*, No. 17-CV-4576 (GHW)(BCM), 2021 WL 1191527, at *6 (S.D.N.Y. Mar. 30, 2021) (quotation omitted). "In many cases, the duty to preserve begins when the plaintiff files suit, but it varies with the circumstances of the case." *Jacquety v. Baptista*, 538 F. Supp. 3d 325, 342 (S.D.N.Y. 2021) (quotation omitted); *see also Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011) ("When litigation is 'reasonably foreseeable' is a flexible fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry." (citing *Fujitsu*, 247 F.3d at 436)). Moreover, "when the duty to preserve evidence arises may, under certain circumstances, be dependent upon the nature of the evidence." *Arista Recs. LLC v. Usenet.com, Inc.*, 608 F. Supp. 2d 409, 430 (S.D.N.Y. 2009).

Plaintiff makes the blanket assertion that "Defendants' duty to preserve evidence related to Plaintiff's sexual harassment allegations arose by the date on which he filed [the DHR Complaint], May 9, 2022." (Dkt. 94 at 15-16 (emphasis

added)). Plaintiff points to no other date as a possible date on which an obligation to preserve arose.

The Court disagrees that the DHR Complaint triggered an obligation to preserve as to each and every Defendant. The DHR Complaint only names the City Law Department and Wilson as respondents. (Dkt. 100-3 at 1). And as noted above, the DHR Complaint names the City as the "[e]ntity that discriminated against you" and Wilson alone as "individual people who discriminated against you." (*Id.* at 3). The DHR Complaint does not mention any of the Individual Defendants other than Wilson by name. (*See* Dkt. 100-3). Moreover, the DHR Complaint does not specifically allege wrongdoing by the PAB Board, or by any particular Board member other than Wilson. (*See id.*). In the section "Description of discrimination," Plaintiff notes his disappointment that only one Board member contacted him the night he first shared his experience of harassment and retaliation, and describes a message from a Board member telling Plaintiff to report his "harassment experience" through "the appropriate channels." (*Id.* at 4-5).

While it is evident how the DHR Complaint could have triggered an obligation to preserve as to the City and Wilson, Plaintiff fails to explain how the DHR Complaint would have put any of the other Individual Defendants on notice of future litigation.[4] For some of the Individual Defendants, Plaintiff does not even address

---

[4]    In his reply brief, Plaintiff states that "Setel provided an affidavit supporting the City's position as to [the] DHR charge." (Dkt. 106 at 6). But the affidavit that Plaintiff has provided is from a separate Article 78 proceeding against the City and PAB, involving an alleged violation of the New York Open Meetings Law. (*See* Dkt. 107-1; Dkt. 107-3). Plaintiff also states that Bascoe "must have had knowledge of the

whether they were aware of the DHR Complaint. *See Field Day, LLC v. Cnty. of Suffolk*, No. CIV.A. 04-2202, 2010 WL 1286622, at \*5 (E.D.N.Y. Mar. 25, 2010) (finding notice of claim did not trigger municipal employees' duty to preserve where there was no evidence as to when or if they learned of the notice of claim, and concluding that their duty to preserve did not arise until the lawsuit was commenced "[g]iven the dearth of evidence in the record identified by the parties on this point"). Plaintiff also does not explain how his allegations of harassment and retaliation by Wilson would put the non-Wilson Individual Defendants on notice that communications from their personal devices and accounts would potentially be relevant.

Determining when a party's obligation to preserve arose vis-à-vis when the evidence at issue was lost is one of the key threshold inquiries in analyzing a claim of spoliation. However, for the non-Wilson Individual Defendants, there is insufficient evidence for the Court to conclude that an obligation to preserve arose before they received notice of the instant lawsuit on or around August 30, 2023. This is significant for the Court's analysis, because, as discussed in more detail below, all of the specific ESI that is alleged to have been lost appears to have been lost prior to that date. Accordingly, the Court finds that Plaintiff has not shown that any of the Individual

---

impending litigation" because Wilson encouraged him to file a DHR complaint of his own. (Dkt. 106 at 6). The Court is not persuaded that the one follows from the other. But even accepting this assertion, as discussed below, Plaintiff has not shown that any ESI from Bascoe's personal devices or accounts has been lost.

Defendants, with the exception of Wilson, had an obligation to preserve evidence at the time the relevant ESI was lost from their personal devices and accounts.

### D.      Content of the Lost ESI

As explained above, to impose sanctions pursuant to Rule 37(e)(1), the Court must find that Plaintiff has been prejudiced by the loss of the information that was lost or destroyed. Fed. R. Civ. P. 37(e)(1). A finding of prejudice requires "some evidence regarding the particular nature of the missing ESI." *Moody*, 217 F. Supp. 3d at 430 (quotation omitted). "The requirement that a movant show that the evidence would have supported his or her case serves the purpose of elucidating the appropriate remedy for the spoliation." *Equinox Holdings*, 592 F. Supp. 3d at 178. "Proof of relevance does not necessarily equal proof of prejudice." *Karsch*, 2019 WL 2708125, at *20 (quotation omitted). "It is not enough for the innocent party to show that the evidence would have been responsive to a document request." *Best Payphones, Inc. v. City of N.Y.*, No. 1-CV-3924 (JG) (VMS), 2016 WL 792396, at *6 (E.D.N.Y. Feb. 26, 2016) (quotation omitted).

Unlike Rule 37(e)(1), Rule 37(e)(2) "does not include a requirement that the court find prejudice" because finding an intent to deprive can support "an inference that the opposing party was prejudiced by the loss of information." Fed. R. Civ. P. 37, Advisory Committee Notes to 2015 Amendment. But that does not mean the extent of the prejudice to the moving party is irrelevant. Sanctions under subsection (e)(2) must still "fit the wrong." *Id.* Courts may accordingly decline to impose the harsher sanctions available under subsection (e)(2) where they are "disproportional to the

prejudice." *See Fashion Exch. LLC v. Hybrid Promotions, LLC*, No. 14-CV-1254 (SHS)(OTW), 2019 WL 6838672, at *6 (S.D.N.Y. Dec. 16, 2019).

Here, Plaintiff seeks the harshest available sanctions. Yet Plaintiff's motion provides virtually no detail about the content of the lost ESI. For the most part, Plaintiff merely alleges that lost communications were related to Plaintiff or the PAB. While the Court is cognizant of imposing too high a burden on Plaintiff as to this issue, the Court does not find Plaintiff's showing—again, with the exception of Wilson, as discussed further below— sufficient to establish prejudice. First, some of the communications at issue, including Signal[5] group chats and Facebook messages, appear to have included Plaintiff. It therefore does not seem unfair to expect Plaintiff to put forth at least some concrete suggestion as to how these messages would be relevant to this case. *See Capricorn Mgmt. Sys., Inc. v. Gov't Emps. Ins. Co.*, No. 15-CV-2926 (DRH)(SIL), 2019 WL 5694256, at *12 (E.D.N.Y. July 22, 2019) (denying the defendant's request for spoliation sanctions where it failed to "show with some degree of specificity how the purported missing e-mails would have been helpful" to its defense or counterclaims), *adopted*, 2020 WL 1242616 (E.D.N.Y. Mar. 16, 2020). Second, despite deposing the Individual Defendants, Plaintiff does not appear to have attempted to elicit any testimony from them regarding the content of the lost

---

[5]     Signal is an ephemeral messaging platform that "allows users to send and receive encrypted text messages  . . . and to change settings to automatically delete these messages after a short period of time." *Herzig v. Arkansas Found. for Med. Care, Inc.*, No. 2:18-CV-02101, 2019 WL 2870106, at *4 (W.D. Ark. July 3, 2019). There are some factual disputes in this case with respect to how certain defendants' Signal messages were deleted. The Court does not find that sufficient information has been provided about Signal to resolve these factual disputes.

messages beyond the fact that they were related to Plaintiff or the PAB. *See Int'l Bus. Machines Corp. v. Naganayagam,* No. 15 CIV. 7991 (NSR), 2017 WL 5633165, at *6 (S.D.N.Y. Nov. 21, 2017) (finding no prejudice where moving party deposed custodian of allegedly spoliated emails but did not provide the court with testimony about the specific content of the emails). Third, the record indicates that digital communications amongst the parties were both professional and social in nature, or some combination thereof. For example, and as discussed further below, Setel testified that certain Signal group chats that did not include Plaintiff were related to "an activist group who messaged about events or rallies or talks or . . . community events." (Dkt. 110-4 at 5). It is unclear what relevance such communications would have to the claims at issue here. Consequently, the fact that lost messages "related to" Plaintiff or the PAB is not particularly helpful in determining whether or to what extent the messages were relevant to the instant lawsuit.

Accordingly, the Court finds that the record does not support the imposition of the harsh spoliation sanctions sought by Plaintiff.

### E.    Analysis of the Individual Defendants' Conduct

#### 1.    Campbell

Campbell served as the Director of Staff Support at the PAB from December 2021 to mid-2023. (Dkt. 28 at ¶ 18). Plaintiff asserts that Campbell "did not perform any search of her phone for documents relevant to this case" and "did not perform any search for the [Constangy] investigation." (Dkt. 94 at 14). Plaintiff also states

"[b]ecause Campbell did not perform any search for electronic documents at any time, it was impossible to determine from her deposition if she engaged in spoliation." (*Id.*).

Plaintiff has not shown that any relevant ESI existed on Campbell's personal devices or accounts. Campbell testified that she did not use her personal cellphone for work when she was employed by the PAB, and that she only used her personal email in connection with the PAB to complete onboarding paperwork prior to being hired. (Dkt. 93-10 at 6). Plaintiff has also not alleged that any particular ESI has been lost a result of Campbell's conduct. The Court therefore finds that spoliation sanctions are not warranted against Campbell.

### 2.    Banks

Banks served as the Chief of Public Affairs at the PAB from May 2021 through the commencement of this litigation. (*See* Dkt. 28 at ¶ 21). Plaintiff asserts that Banks spoliated relevant documents because she "probably" deleted a public Facebook post she made regarding Plaintiff in November of 2022, and because she performed a search of her emails only in October or November of 2024 but did not perform any other search for relevant documents. (Dkt. 94 at 14).

However, the Facebook post at issue is a part of the record in this case (*see* Dkt. 100-7 at 1 (copy of the Facebook post)), and it was apparently used by Plaintiff's counsel as an exhibit during Banks' deposition (*see* Dkt. 100 at 7). While the Court has not been presented with the full background of how Plaintiff came into possession of a copy of the Facebook post, Rule 37(e) only permits sanctions for ESI that "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). The

- 20 -

Facebook post cannot serve as a basis for spoliation sanctions, because at least a copy of it still exists and Plaintiff has access to that copy.

Beyond the Facebook post, Plaintiff fails to allege or demonstrate that any information in Banks' personal possession has been lost. The Court therefore finds that spoliation sanctions are not warranted against Banks.

### 3.   Bascoe

Bascoe served as an attorney for the PAB from January 2022 to May 2022, and as "an 'interim' or 'acting' Executive Director" from May 2022 to November 2022. (Dkt. 28 at ¶ 17). Plaintiff asserts that Bascoe "was unsure if he had deleted any relevant texts or emails." (Dkt. 94 at 15). Plaintiff also notes that Bascoe produced "several tranches of texts and emails from his personal accounts and devices." (*See* Dkt. 94 at 15).

The Court does not find that spoliation sanctions are warranted against Bascoe. The deposition testimony provided to the Court merely reflects that Bascoe testified that he did not know whether emails or text messages from 2022 about Plaintiff or the PAB were deleted. (*See* Dkt. 93-12 at 5, 6). This hardly satisfies Plaintiff's burden of demonstrating that relevant communications were actually lost. Even if relevant communications were lost, Plaintiff has not submitted any deposition testimony or other evidence indicating when that may have occurred, such that the Court would be capable of determining whether the communications were lost after Bascoe's obligation to preserve evidence arose.

Further, Bascoe testified that he "turned over everything that [he] ha[d]" (*id.* at 6), and Plaintiff describes Bascoe in his motion papers as having "provide[d] Plaintiff with a substantial volume of discovery . . . from personal accounts or devices" (Dkt. 94 at 24). While this does not preclude the possibility that additional evidence may have been lost prior to Bascoe's production, the record before the Court simply does not tend to support a claim of spoliation on Bascoe's part. *See Tri-Cnty. Motors, Inc. v. Am. Suzuki Motor Corp.,* 494 F. Supp. 2d 161, 177 (E.D.N.Y. 2007) ("[S]peculative assertions as to the existence of documents do not suffice to sustain a motion for spoliation of evidence."), *aff'd*, 301 F. App'x 11 (2d Cir. 2008).

### 4.    Setel

Setel served as a PAB Board member from January 2020 through the commencement of this litigation. (*See* Dkt. 28 at ¶ 19). Plaintiff asserts that Setel was responsible for the loss of Signal messages and text messages that she exchanged with Wilson and other PAB Board members. (Dkt. 94 at 14).

Unlike Campbell, Banks, and Bascoe, Plaintiff has shown that some ESI was plausibly lost from Setel's personal devices. Nevertheless, the Court does not find that any spoliation sanctions are appropriate because, for the reasons set forth above, Plaintiff has not established that Setel had an obligation to preserve evidence when any ESI was lost. With respect to the Signal messages, Setel testified in her deposition that she did not have possession of any Signal messages with other PAB Board members when she searched her messages for the Constangy Investigation (Dkt. 93-11 at 5), which took place between May and October of 2022 (*see* Dkt. 93-4

at 8). With respect to the text messages, Setel did testify that she may have had text messages between herself and other PAB Board members at the time of the Constangy Investigation, and that those text messages may have become lost at some later point. (Dkt. 93-11 at 3-4). But Plaintiff has not shown that the text messages were lost after Setel's obligation to preserve arose.

Moreover, even if Plaintiff could establish that Setel failed to take reasonable steps to preserve Signal or text messages after her obligation to preserve arose, sanctions would not be warranted under either Rule 37(e)(1) or (e)(2). First, the Court cannot find any prejudice from the loss of the messages because, as explained above, there has been a minimal showing regarding the content or potential relevance of these messages. To the extent Setel testified about the content of these messages, she discussed that the Signal group chats that did not include Plaintiff were related to "an activist group who messaged about events or rallies or talks or . . . community events." (Dkt. 110-4 at 5). It is not clear how these messages would have any relevance to this case.

Plaintiff also has not shown by a preponderance of the evidence that Setel deleted the messages with the requisite specific intent of depriving Plaintiff of their use in this litigation. Setel testified that she did not intentionally delete text messages. (Dkt. 93-11 at 4). Plaintiff has also not shown that Setel affirmatively deleted Signal messages. Rather, it seems equally (if not more) plausible that the messages were lost inadvertently as a result of Setel's evident lack of sophistication with the application.

### 5.    Nickoloff

Nickoloff served as a PAB Board member from January 2020 to January 2023. (Dkt. 28 at ¶ 20). Plaintiff asserts that Nickoloff deleted the Signal application prior to the Constangy Investigation and did not turn over any Signal messages to those conducting the investigation. (Dkt. 94 at 13). Plaintiff also states that Nickoloff did not search any messaging applications for communications related to Plaintiff's termination or communications regarding this lawsuit. (*Id.* at 13-14). Plaintiff further states that Nickoloff took paper notes on PAB business, which he shredded. (*Id.*).

As an initial matter, the shredded PAB notes are not covered by Rule 37(e), which only applies to the spoliation of ESI. A different legal standard governs the spoliation of physical evidence. *Best Payphones,* 2016 WL 792396, at *3 ("[A]s the law currently exists in the Second Circuit, there are separate legal analyses governing the spoliation of tangible evidence versus electronic evidence."). Plaintiff does not address this standard in his motion papers. Accordingly, to the extent there was any spoliation of relevant PAB notes (which is far from clear), Plaintiff has not met his burden of showing that sanctions are warranted as to those documents.

In terms of ESI, the Court does not find that spoliation sanctions are warranted against Nickoloff. As with Setel, Plaintiff has shown that some ESI was lost from Nickoloff's personal devices and accounts. But Plaintiff has not shown that this ESI was lost after Nickoloff's obligation to preserve arose. Based on the deposition testimony Plaintiff has submitted, the only communications that appear to have been lost from Nickoloff's personal devices are Signal messages—which were

lost when Nickoloff deleted the Signal application prior to the Constangy Investigation in May of 2022—and Facebook messages—which Nickoloff discovered were lost when he searched for them during the Constangy Investigation. (Dkt. 110-3 at 3; Dkt. 93-9 at 5).

Moreover, as with Setel, even if Plaintiff could establish all the threshold requirements under Rule 37(e), the Court cannot conclude that Plaintiff was prejudiced by the loss of Nickoloff's Signal or Facebook messages. In the deposition testimony provided to the Court, there appears to be only one colloquy regarding the content of the lost Signal messages. When asked whether the lost Signal messages included messages "related to" Plaintiff, Nickoloff responded that "[t]hey contained conversations with [Plaintiff] that half of them were deleted. They contained board-related information of all kinds. I will not say that they are specifically related to his suspension or—it's certainly not related to the Constangi [sic] investigation[.]" (Dkt. 110-3 at 5-6). This does not provide the Court with any concrete understanding of the content of these Signal messages, such that the Court could determine whether Plaintiff has been prejudiced by their loss. Even if Nickoloff had assented to the question, the fact that the lost messages were related to Plaintiff would not be sufficient to establish prejudice, for the reasons discussed above. With respect to the Facebook messages, the provided portions of Nickoloff's deposition testimony do not shed any light on the content of those messages, or the potential number of relevant messages that may have been lost. The single Facebook message chain that is in the record (*see* Dkt. 93-17) is not with a PAB Board member or employee, and it is not of

the sort that the Court could draw any conclusions about the existence of other messages that may have been lost.

Plaintiff has also not shown by a preponderance of the evidence that Nickoloff deleted the ESI at issue with the intent to deprive. Nickoloff testified that he did not delete Facebook messages (Dkt. 93-9 at 6), and that he deleted the Signal application to "get on the same page in terms of communications" once Wilson was replaced by a new PAB chair (*see* Dkt. 110-3 at 4). Nickoloff was also apparently not aware of the DHR Complaint (*see id.* at 5) or that the Constangy Investigation concerned Plaintiff's sexual harassment allegations (*see* Dkt. 94 at 20-21). Given his limited awareness of the prospect of litigation, the Court cannot attribute Nickoloff's deletion of Signal to a specific intent to deprive Plaintiff of the Signal messages as evidence in this lawsuit.

### 6.    Wilson

As previously noted, Wilson served as the Chair of the PAB and as a PAB Board member from January 2020 to June 2022. (Dkt. 28 at ¶ 16). Plaintiff states that prior to receiving a preservation notice, Wilson deleted text messages regarding Plaintiff's time at the PAB and may have deleted text messages that related to Plaintiff's allegations in this case. (Dkt. 94 at 12). Plaintiff also states that Wilson deleted all of her Signal messages, including those relevant to this case, in the fall of 2022. (*Id.* at 13). Plaintiff further states that Wilson used her personal email address to discuss PAB matters and deleted those emails in the fall of 2022. (*Id.*).

The Court concludes that some spoliation sanctions are warranted against Wilson. First, the Court finds that Wilson's obligation to preserve evidence arose

when she received notice of the DHR Complaint on or around May 9, 2022, as, at that point, litigation would have been reasonably foreseeable. Defendants do not address this issue in their brief and have offered no argument as to why Wilson would not have been on notice at that time.

Next, it is clear that, at some point after her obligation to preserve arose, Wilson deleted text messages, Signal messages, and emails from her personal devices and accounts. The Court further finds her deletion of this ESI was unreasonable. *See Gill*, 2023 WL 7412275, at *4 (whether a party took reasonable steps to preserve evidence "is equated to roughly a negligence standard" and "[o]nce the duty to preserve attaches, any destruction of documents is, at a minimum, negligent") (quotations and alteration in original omitted). In short, Plaintiff has established the threshold requirements for spoliation sanctions against Wilson.

The Court thus must next determine whether sanctions are warranted under Rule 37(e)(1) and/or (e)(2). The Court finds that Rule 37(e)(1) sanctions are appropriate here. Plaintiff has shown the existence of some broadly relevant communications involving Wilson that raise questions about the existence of possible further probative communications that may have been lost. Specifically, Plaintiff has proffered text messages from Wilson to Bascoe encouraging him to file a DHR complaint of his own against Plaintiff. (*See* Dkt. 93-14). Plaintiff has adequately explained that communications of this sort would support the allegations in his amended complaint that the Individual Defendants and other City employees engaged in filing retaliatory competing complaints against Plaintiff. (*See* Dkt. 94 at

15; Dkt. 28 at ¶ 234). The Court finds that Plaintiff has been prejudiced by being denied access to a potentially relevant body of communications involving Wilson that could have supported his case or at least been used to test Wilson's credibility. *See Ocasio v. City of Canandaigua*, No. 18-CV-6712 MAV CDH, 2025 WL 1064721, at *8 (W.D.N.Y. Apr. 9, 2025); *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 754 F. Supp. 3d 373, 383 (E.D.N.Y. 2024); *Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 65 (S.D.N.Y. 2020).

Rule 37(e)(2) sanctions, however, are not appropriate here. Plaintiff has not shown by a preponderance of the evidence that Wilson deleted the ESI at issue with the intent to deprive Plaintiff of the information's use in this case.[6] Plaintiff merely argues that "Wilson admitted to intentionally destroying Signal messages, emails, and text messages that were relevant to this litigation." (Dkt. 94 at 26). However, "[a] party's acting negligently <u>or knowingly</u> will not suffice to justify the sanctions enumerated in Rule 37(e)(2)." *Hoffer*, 128 F.4th at 438 (emphasis added).

---

[6]   It is also not even clear whether Plaintiff applies the correct standard under Rule 37(e)(2). In particular, Plaintiff suggests that "willful" destruction of evidence is sufficient to show intent to deprive. (*See* Dkt. 94 at 25 (citing *Sekisui Am. Corp. v. Hart*, 945 F. Supp. 2d 494, 506 (S.D.N.Y. 2013)). But Plaintiff appears to be conflating the state of mind required for sanctions under Rule 37(e)(2) with the state of mind required prior to the 2015 amendment to the Rule, and which is now only applicable to spoliation of physical evidence. *See Hoffer*, 128 F.4th at 437-38. As explained above, showing intent to deprive under Rule 37(e)(2) requires more than "merely the intent to perform an act that destroys ESI." *Id.* at 440 (quotation omitted). Plaintiff similarly conflates the standards for spoliation of ESI and non-ESI in arguing that he does not need to show prejudice because of Defendants' gross negligence. (*See* Dkt. 94 at 22-23). Under Rule 37(e), gross negligence does not support an inference that the destroyed evidence was unfavorable to the party responsible for its destruction. *Hoffer*, 128 F.4th at 438. Accordingly, gross negligence does not obviate the need to show prejudice from the spoliation of ESI. *See id.*

To the extent that Plaintiff is asking the Court to infer that Wilson acted with the requisite intent based on her deposition testimony, the Court cannot reach such a conclusion. In reviewing the portions of Wilson's deposition testimony that Plaintiff has submitted (which, frankly, paint a less than clear picture of when and how the loss of Wilson's ESI transpired), the Court finds that there are equally plausible explanations for the loss of Wilson's communications that do not involve bad faith. Specifically, when Wilson was asked whether she deleted her text messages in or around the fall of 2022 when she moved to Chicago, Wilson suggested that she deleted them because she had already given them to the City in connection with its response to the DHR Complaint, and that they "would have been considered duplicates." (Dkt. 110-5 at 9-10). Additionally, Wilson testified that she stopped deleting communications related to the PAB when the City notified her about the instant lawsuit in August 2023. (*Id.* at 18). It is therefore plausible that following the City's response to the DHR Complaint and prior to the commencement of the instant lawsuit, Wilson held the mistaken belief that she had no obligation to preserve relevant communications on her personal devices and accounts, and that she deleted those communications in the fall of 2022 in connection with the mental health issues about which she testified. (*See id.* at 8). This would certainly constitute negligence or perhaps even gross negligence. But that is insufficient to show the requisite intent under Rule 37(e)(2). On the whole, the Court cannot conclude by a preponderance of the evidence that Wilson deleted ESI with the intent to deprive.

Having found that Plaintiff has been prejudiced by the loss of Wilson's communications, but that Wilson did not act with the intent to deprive, the Court must next determine the appropriate sanction under Rule 37(e)(1). Plaintiff's proposed terminating sanctions and alternative proposal of barring Defendants from asserting certain affirmative defenses (Dkt. 94 at 26-27) are not appropriate because they are "greater than necessary to cure the prejudice" and because terminating sanctions are available only upon showing an intent to deprive. *See* Fed. R. Civ. P. 37(e)(1), (2). Plaintiff's additional proposal that "the Court should issue an adverse inference instruction to the effect that Plaintiff has been deprived of evidence that would be essential for his use at trial" (Dkt. 94 at 28) is also not appropriate because Plaintiff has not shown that the evidence that was lost was "essential"—only that it was potentially relevant. *See Perez v. Molina*, No. 23-CV-801 (JHR) (BCM), 2025 WL 605478, at *6 (S.D.N.Y. Feb. 25, 2025) ("because sanctions are being imposed pursuant to subsection (e)(1) only, the jury should not be instructed that it 'may or must presume' that the evidence was unfavorable to the defendants").

The Court finds that the appropriate remedy here is to permit Plaintiff to present evidence to the jury concerning the loss of ESI from Wilson's personal devices and accounts as well as the likely relevance of the information. *See* Fed. R. Civ. P. 37 Advisory Committee Notes to 2015 Amendment (noting that an appropriate sanction under Rule 37(e)(1) would be to allow the prejudiced party "to present evidence to the jury concerning the loss and likely relevance of information," which the jury "may consider . . . along with all the other evidence in the case"); *see also Castro v. Smith*,

- 30 -

No. 16-CV-8147 (JGLC), 2023 WL 5371311, at *13 (S.D.N.Y. Aug. 22, 2023) (permitting presentation of evidence at trial regarding spoliation as remedy under Rule 37(e)(1)); *Bursztein,* 2021 WL 1961645, at *9 (same); *Fashion Exch.* 2019 WL 6838672, at *7 (same). "[S]anctions of this nature ensure that the finder of fact will have the full context for the evidentiary imbalance that [may] become apparent at trial, which is itself relevant evidence going to the parties' credibility and other factual issues." *Charlestown Capital Advisors,* 337 F.R.D. at 69 (quotation omitted). However, "it is the trial judge who must determine the precise scope of the spoliation evidence to be permitted at trial and craft any related jury instructions on a full evidentiary record." *Id.* Plaintiff may accordingly renew this matter with the presiding judge at the appropriate phase of the proceedings.

**F.     ESI on the Individual Defendants' Personal Devices and Accounts Were Not in the City's Control**

As the Court previously outlined, Plaintiff seeks spoliation sanctions against the City based on its failure to issue litigation holds to the Individual Defendants until November 8, 2024. (*See* Dkt. 94 at 12). Plaintiff also asserts that the City never informed certain non-party employees that they had an obligation to preserve documents.[7] (*Id.*).

In determining whether spoliation sanctions are warranted against the City, the Court finds that Plaintiff's motion inadequately addresses several key issues.

---

[7]     Plaintiff makes specific reference to Chenoa Maye, a PAB employee, and Kim Smith, a City Council member (Dkt. 94 at 12) but does not clearly allege any spoliation by either individual. The Court lacks sufficient information to incorporate these two individuals into its analysis and does not address them any further.

First, Plaintiff makes no distinction between ESI contained on the Individual Defendants' personal devices and accounts and ESI contained on their work devices and accounts. Significantly, however, there is no evidence of spoliation of ESI from the latter, and Defendants have represented that all City emails and Teams messages are automatically retained and archived for at least a decade. (Dkt. 100-1 at ¶ 9). All of Plaintiff's spoliation claims therefore concern ESI from the Individual Defendants' personal devices and accounts. Plaintiff's motion presupposes that the City can be sanctioned for the loss of ESI from City employees' personal devices and accounts, but the issue is far from straightforward.

One of the threshold questions on a motion for spoliation sanctions is whether the party against whom sanctions are sought had an obligation to preserve the evidence at the time it was lost. *Karsch*, 2019 WL 2708125, at *18. Determining whether a party had an obligation to preserve "involves two related inquiries: *when* does the duty to preserve attach, and *what* evidence must be preserved?" *Moody*, 271 F. Supp. 3d at 426 (quotation omitted). The Court agrees with Plaintiff that the City's obligation to preserve evidence arose when it received notice of Plaintiff's DHR Complaint.[8] But the scope of the City's preservation obligations is less clear.

---

8     Defendants argue that the DHR Complaint did not put the City on notice because (1) Plaintiff "cites only to Southern District and Eastern District of New York precedent" and (2) Plaintiff "averred in his DHR Complaint that he did not want to pursue litigation." (Dkt. 100 at 13). As to the first argument, the Court is unclear what precedent Defendants are specifically referencing, as they appear to cite to pages from the table of authorities in Plaintiff's memorandum of law, which includes cases from this District. In any event, decisions from other districts in the Second Circuit constitute persuasive authority, and Defendants do not suggest (nor could they successfully argue) that courts in this District follow a different standard for

When determining the scope of evidence covered by a party's obligation to preserve, courts generally look to Rule 34. *See, e.g.*, *Doe v. Wesleyan Univ.*, No. 3:19-CV-01519 (JBA), 2022 WL 2656787, at *13 (D. Conn. July 8, 2022). Rule 34 "entitles parties to documents (including ESI) 'which are in the possession, custody or control of the party upon whom the request is served.'" *Id.* (quoting Fed. R. Civ. P. 34(a)). "Evidence is within a party's control . . . when the party has the legal right, authority, or practical ability to obtain such evidence by virtue of its relationship with the party in possession of the evidence." *Stanbro v. Westchester Cnty. Health Care Corp.*, No. 19-CIV-10857 (KMK)(JCM), 2021 WL 3863396, at *11 (S.D.N.Y. Aug. 27, 2021) (quotation and emphasis omitted). "The party seeking discovery has the burden of showing that the documents are within the other party's control." *Coventry Cap. US LLC v. EEA Life Settlements Inc.*, 334 F.R.D. 68, 73 (S.D.N.Y. 2020); *see also R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 36 (S.D.N.Y. 2010) (declining to impose spoliation sanctions where movant did not show that evidence was within opposing party's control), *adopted*, 271 F.R.D. 55 (S.D.N.Y. 2010).

---

determining when the duty to preserve arises. As to the second argument, Defendants take a statement from the DHR Complaint completely out of context. In the DHR Complaint, Plaintiff explains that when he first told the PAB Board about his experience of harassment and retaliation, he said: "'I do not want this to become public. I don't want to file a lawsuit against the City. I don't want to tell my staff about this.'" (Dkt. 100-3 at 4). This cannot reasonably understood as an averment that Plaintiff would never file a lawsuit against the City in connection with this matter. Moreover, that statement was made before Plaintiff filed the DHR Complaint. Plaintiff's subsequent filing of the DHR Complaint plainly evinces an intent to pursue litigation against the City.

The issue here is whether communications from the Individual Defendants' personal devices and accounts were within the City's control.[9] "[F]ederal courts are divided on when and how a party seeking discovery can access ESI stored on an employee's personal device[.]" *Stinson v. City of N.Y.*, No. 10 CIV. 4228 (RWS), 2016 WL 54684, at *5 (S.D.N.Y. Jan. 5, 2016). "When considering whether an employer has 'control' over communications on its employees' personal devices, courts have considered several factors," including (1) "whether the employer issued the devices"; (2) "how frequently the devices were used for business purposes"; (3) "whether the employer had a legal right to obtain communications from the devices"; and (4) "whether company policies address access to communications on personal devices." *Miramontes v. Peraton, Inc.*, No. 3:21-CV-3019-B, 2023 WL 3855603, at *4 (N.D. Tex. June 6, 2023) (citing cases across circuits).

Here, the relevant factors weigh against a finding of control. First, there is no indication that Individual Defendants' personal devices were issued by the City. Additionally, at least some of the Individual Defendants had been issued separate work devices by the City (and it appears that the Individual Defendants had City email accounts). (*See, e.g.*, Dkt. 93-1 at 3 (Banks testifying that she had a work phone and work laptop); Dkt. 110-1 at 52 (Defendants' counsel stating at oral argument that

---

[9]     With respect to the City's own ESI, including emails and other messages sent by the Individual Defendants using City-owned devices, Plaintiff has failed to make a showing that any ESI has been lost. Accordingly, while it was "at least negligent" for the City not to have issued a litigation hold with respect to such documents when it reasonably anticipated litigation, Plaintiff has not shown any prejudice flowing from that failure, nor has he shown an intent to deprive. *In re Keurig*, 341 F.R.D. at 540.

"the City, I think, provided a lot of the PAB employees with work phones . . . with the assumption that they would conduct City business on their City-issued cell phones."); Dkt. 93-10 at 6 (indicating Campbell had a City email account); Dkt. 100-1 at ¶ 12 (Defendants' counsel stating that PAB Board members had City email accounts)). The Court agrees with Defendants that by issuing work devices to the Individual Defendants, the City would likely not expect them to conduct work-related business on their separate personal devices. *See Rattie v. Balfour Beatty Infrastructure, Inc.*, No. 22-CV-05061-RS (LJC), 2023 WL 5507174, at *4 (N.D. Cal. Aug. 25, 2023) (finding evidence that employer "issue[d] work phones to its management employees, and that they [were] expected to use these devices for work-related communications" as probative of employer's lack of control of text messages on management employees' personal devices); *La Belle v. Barclays Cap. Inc.*, 340 F.R.D. 74, 84 (S.D.N.Y. 2022) (finding that employer acted reasonably in assuming that employees were following its policy to use company-issued devices for work-related purposes).

Second, Plaintiff has not established that the Individual Defendants frequently used their personal devices and accounts for PAB-related business. As discussed throughout this Decision, the Court has very limited information on the content of any communications that were generated and maintained on the Individual Defendants' personal devices and accounts. The Court accepts that the Individual Defendants communicated with one another through these devices and accounts, and that some of those communications were about the PAB. But that does not specifically

show that such communications were in furtherance of PAB-related business, as opposed to co-workers and colleagues having personal discussions.

Third, Plaintiff has not shown that the City had a legal right to obtain communications from the Individual Defendants' personal devices and accounts. In particular, Plaintiff fails to address any Fourth Amendment considerations related to the City's status as a public employer. *See Leventhal v. Knapek,* 266 F.3d 64, 72-73 (2d Cir. 2001) ("[T]he Fourth Amendment protects individuals from unreasonable searches conducted by the Government, even when the Government acts as an employer." (quoting *Nat'l Treasury Employees Union v. Von Raab,* 489 U.S. 656, 665 (1989)). Public employees "have a reasonable expectation of privacy in their personal devices, and thus some of the information on their personal devices triggers Fourth Amendment protections and requires [their employer] to obtain a warrant before searching [the employees'] personal property." *ACLU of Tennessee, Inc. v. City of Memphis*, No. 2:17-CV-02120 (JPM)(JAY), 2020 WL 4819544, at *2 (W.D. Tenn. Aug. 19, 2020).[10]

---

[10]    Some courts have not addressed any added constitutional considerations when considering whether a public employer had control over its employees' personal devices—either in the context of spoliation sanctions or motions to compel discovery. *See, e.g., Muslims on Long Island, Inc. v. Town of Oyster Bay*, No. 25-CV-00428 (SJB) (JMW), 2025 WL 2576705, at *3 (E.D.N.Y. Sept. 7, 2025); *Shim-Larkin v. City of N.Y.*, No. 16-CV-6099 (AJN)(KNF), 2019 WL 5198792, at *10 (S.D.N.Y. Sept. 16, 2019); *Goolsby v. Cnty. of San Diego*, No. 3:17-CV-564-WQH-NLS, 2019 WL 3891128, at *4 (S.D. Cal. Aug. 19, 2019); *Alter v. Rocky Point Sch. Dist.*, No. 13-1100 JS AKT, 2014 WL 4966119, at *10 (E.D.N.Y. Sept. 30, 2014). While it is unclear if the parties in these cases raised any constitutional arguments, this Court finds the Fourth Amendment issue here to be glaring.

In *O'Connor v. Ortega*, 480 U.S. 709 (1987), a plurality of the Supreme Court recognized an exception to the warrant requirement in connection with "searches conducted in the 'workplace context,' meaning searches of 'those areas and items that are related to work and are generally within the employer's control.'" *Port Auth. Police Benevolent Ass'n, Inc. v. Port Auth. of New York & New Jersey*, No. 15-CV-3526 (KMW)(RLE), 2017 WL 4403310, at *4 (S.D.N.Y. Sept. 29, 2017) (quoting *O'Connor*, 480 U.S. at 715). Under the *O'Connor* exception, "when conducted for a 'noninvestigatory, work-related purpos[e]' or for the 'investigatio[n] of work-related misconduct,' a government employer's warrantless search is reasonable if it is 'justified at its inception' and if 'the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of" the circumstances giving rise to the search." *City of Ontario, Cal. v. Quon*, 560 U.S. 746, 761 (2010) (quoting *O'Connor*, 480 U.S. at 725-26).

Some courts have found that the *O'Connor* exception does not apply where the government employer conducts searches of its employees' "purely personal" cell phones. *See, e.g.*, *Turiano v. City of Phoenix*, 562 F. Supp. 3d 261, 277 (D. Ariz. 2022); *Port Auth. Police Benevolent Ass'n*, 2017 WL 4403310, at *5. Determining whether an employee's personal cell phone falls within the *O'Connor* exception, and can therefore be subject to a warrantless search, requires especially difficult line-drawing exercises. As the court in *Turiano* observed, because "cell phones are so pervasive an aspect of modern life that virtually any public employee will have, and occasionally use, a personal cell phone during business hours," the fact that an employee's personal cell

phone "happens to be used to send the occasional work-related message[] is. . . insufficient to render the cell phone part of the 'workplace context.'" *Turiano*, 562 F. Supp. 3d at 277; *cf. Riley v. California*, 573 U.S. 373, 396-97 (2014) ("[A] cell phone search would typically expose to the government far *more* than the most exhaustive search of a house: A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form—unless the phone is.") (emphasis in original).

In other words, whether a public employer may search its employees' personal electronic devices absent a warrant is a complex and fact-bound question. Suffice to say, in this case, the parties have not addressed this issue in their briefing, and the Court finds, for reasons repeatedly discussed, that it lacks the necessary information to resolve this fact-intensive inquiry in Plaintiff's favor.

The Court turns last to whether any City policies address the City's ability to access communications on its employees' personal devices. In the public employment context, this factor is not entirely distinct from the Fourth Amendment inquiry, as a government employee's expectation of privacy "may be reduced by virtue of actual office practices and procedures, or by legitimate regulation." *O'Connor*, 480 U.S. at 717; *see also United States v. Linder,* No. 12 CR 22-1, 2012 WL 3264924, at *6 (N.D. Ill. Aug. 9, 2012) ("Courts have . . . deferred to public employers' official policies that expressly authorize access to the employee's workplace and have used such policies to rule that the employee does not retain a reasonable expectation of privacy in their workplace.").

Here, neither party has provided any evidence related to the City's policies on its employees' use of their personal devices or accounts or the City's access thereto, or whether such policies exist in the first place.[11] Accordingly, this factor does not support a finding of control on the City's part.

On balance, Plaintiff has not sufficiently shown that the City had control of the Individual Defendants' personal devices and accounts. The Court thus cannot conclude that the City's obligation to preserve evidence in this case encompassed ESI contained on the Individual Defendants' personal devices and accounts. Spoliation sanctions are therefore not warranted against the City in connection with the loss of any ESI from the Individual Defendants' personal devices and accounts.

### G. Defendants' Counsel

Finally, Plaintiff moves for spoliation sanctions against Defendants' counsel. (Dkt. 94 at 6, 28). As Plaintiff does not elaborate on this aspect of his motion, it is unclear to what extent it overlaps with Plaintiff's request for attorney's fees under Rule 37(a)(5)(A). (*See id.* at 28). Relatedly, it is not clear that Rule 37(a)(5), which governs expense-shifting sanctions for motions to compel discovery, applies to motions for spoliation sanctions under Rule 37(e). *See, e.g., Best Payphones, Inc. v. Dobrin*, 409 F. Supp. 3d 130, 135 (E.D.N.Y. 2018) (noting that "it is true that Rule 37(a)(5)(A) was not applicable to Defendants' spoliation motion"). Many courts locate their authority to impose monetary sanctions for spoliation of ESI under Rule

---

11    When the Court asked Defendants' counsel about this issue at oral argument, she stated that she did not know whether the City has a policy regarding the use of personal devices for work.

37(e)(1), on the basis that "misconduct that causes a party to incur additional expenses is a form of prejudice that supports an award of sanctions." *Hughes v. City of N.Y.*, No. 1:18-CV-09380-MKV, 2021 WL 4295209, at *14 (S.D.N.Y. Sept. 21, 2021) (collecting cases); *see also In re Keurig*, 341 F.R.D. at 527 ("Rule 37(e)(1) authorizes a court to award attorneys' fees and costs to the moving party to the extent reasonably necessary to remediate any prejudice caused by the spoliation."). Sanctions would not be warranted here under Rule 37(a)(5)(A) in any event, because the Court is largely denying Plaintiff's motion.

However, under Rule 37(e)(1), the Court does find that some form of monetary sanction is appropriate against Defendants' counsel, the City of Rochester Law Department. "The Court has wide discretion to apportion Rule 37 monetary sanctions between a party and its counsel." *Hughes*, 2021 WL 4295209, at *14 (quotation omitted). Here, as counsel for Defendants, the City of Rochester Law Department "failed to take effective steps to ensure that ESI would be preserved." *Vega*, 2023 WL 6318919, at *15 n.11 (awarding attorney's fees and costs against defense counsel in connection with spoliation motion) (quotation and alterations omitted). In particular, the failure to issue litigation holds until well after the duty to preserve had attached was unreasonable and constituted negligence, at minimum. *See Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 162 (2d Cir. 2012); *In re Keurig*, 341 F.R.D. at 540.

While permitting Plaintiff to present evidence regarding the loss of Wilson's ESI is an adequate remedy for the prejudice incurred by Plaintiff from the loss of that

information, Plaintiff has been further prejudiced by having to expend time and resources to determine the extent of any spoliation. *See Bursztein*, 2021 WL 1961645, at *9 (imposing monetary sanctions "to compensate Plaintiff for the time and resources spent because of Defendants' dilatory conduct"); *Fashion Exch.* 2019 WL 6838672, at *7 (imposing monetary sanctions "to compensate Defendants for the time and resources spent by Plaintiff's dragging out [the spoliation] issue"). This latter prejudice is directly attributable to the City of Rochester Law Department. The Court finds particularly significant the months during which Defendants' counsel dragged out the question of whether the City issued litigation holds to the Individual Defendants, necessitating repeated judicial intervention, and ultimately culminating in the Court's November 8, 2024 Order directing Defendants to disclose information related to litigation holds issued to the Individual Defendants. (Dkt. 60). Defendants' counsel should have been able to answer the straightforward question of whether litigation holds were issued without any unreasonable delay.

Accordingly, the City of Rochester Law Department shall compensate Plaintiff for the reasonable expenses, including attorney's fees, that he incurred between June 2024 and November 2024 in pursuing information from Defendants' counsel about whether the City issued litigation holds to the Individual Defendants and in litigating this issue before the Court.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for spoliation sanctions (Dkt. 92) is granted in part and denied in part. Plaintiff may present evidence at trial regarding

- 42 -

the loss of text messages, Signal messages, and emails from Wilson's personal devices and accounts. Within 30 days of the entry of this Decision and Order, Plaintiff shall submit a declaration detailing the reasonable expenses, including attorney's fees, he incurred between June 2024 and November 2024 in pursuing information from Defendants' counsel about whether the City issued litigation holds to the Individual Defendants and in litigating this issue before the Court. Defendants will have 14 days upon the filing of Plaintiff's declaration to file a response thereto, at which time, the Court will take the matter under advisement.

SO ORDERED.

_____
COLLEEN D. HOLLAND
United States Magistrate Judge

Dated:    Rochester, New York
          April 28, 2026