UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CONOR DWYER REYNOLDS,

Plaintiff,

v.

CITY OF ROCHESTER, *et al.*,

Defendants.

Case # 23-CV-6506-FPG

DECISION AND ORDER

## INTRODUCTION

On August 30, 2023, Plaintiff brought the present action in this Court against Defendants Shani Wilson, Duwaine Bascoe, Deborah Campbell, Drorah Setel, Matthew Nickoloff, and Natalie Banks (collectively the "Individual Defendants") as well as the City of Rochester ("the City"). On November 17, 2025, Defendants moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. ECF No. 95. Plaintiff opposes the motion. ECF No. 125. For the reasons that follow, Defendants' motion for summary judgment is GRANTED IN PART AND DENIED IN PART.

## LEGAL STANDARD

Summary judgment is appropriate when the record shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor. *See Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). However, the non-moving party "may not rely on conclusory allegations or unsubstantiated speculation." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quotation omitted).

## BACKGROUND

The following facts are undisputed or taken from the record unless otherwise noted.[1] The Police Accountability Board ("PAB") is an office of and within the City of Rochester, a municipal corporation. ECF No. 95-2 ¶¶ 1–2; ECF No. 126 ¶¶ 1–2. The PAB was created to provide civilian oversight over police misconduct to facilitate better practices within the police department in the City. ECF No. 126 ¶ 48; ECF No. 135-32 ¶ 48. Members of the PAB are volunteers, not City employees. ECF No. 95-2 ¶ 3; ECF No. 126 ¶ 3. In 2022, PAB Board members included Shani Wilson, who was also the Chair of the PAB Board, Reverend Matthew Nickoloff, and Rabbi Drorah Setel. ECF No. 95-2 ¶¶ 4–5; ECF No. 126 ¶¶ 4–5, 49; ECF No. 135-32 ¶ 49. PAB employees included Natalie Banks, Duwaine Bascoe, and Deborah Campbell. ECF No. 95-2 ¶¶ 18–22; ECF No. 126 ¶¶ 18–22. Miguel Melendez was the President of City Council, James Smith was the Chief of Staff of the Rochester City Council, and Rose Nichols was the Director of the City Department of Human Resources Management. ECF No. 95-2 ¶¶ 6–7; ECF No. 126 ¶¶ 6–7; ECF No. 127-69 at 3.

In May 2020, Plaintiff applied for the position of PAB Executive Director. ECF No. 95-2 ¶ 8; ECF No. 126 ¶ 8. At the time, Plaintiff did not have the requisite three years' experience as a high-level administrator or executive. ECF No. 95-2 ¶ 8; ECF No. 126 ¶ 8. On October 19, 2020, Plaintiff became the PAB Executive Director, employed by the City of Rochester. ECF No. 95-2 ¶ 14; ECF No. 126 ¶¶ 14, 54; ECF No. 135-32 ¶ 54. The PAB Board selected Plaintiff to be the PAB Executive Director and held a public hearing on whether Plaintiff should be confirmed for the position in November 2020; the City Council later confirmed Plaintiff as the PAB Executive Director. ECF No. 95-2 ¶¶ 10–12; ECF No. 126 ¶¶ 10–12.

---

[1] To the extent that Plaintiff argues that summary judgment should be denied on the basis that Defendants' Statement of Facts, ECF No. 95-2, is inadequate, the Court rejects that argument. ECF No. 125 at 34. The Court has reviewed the Statement of Facts and concludes that it adequately summarizes the undisputed facts. *See* ECF No. 95-2.

The PAB Board was the ultimate decision-maker as to the agency's work. ECF No. 126 ¶ 57; ECF No. 135-32 ¶ 57. The PAB Board members oversaw the daily responsibilities of the Executive Director, and the Executive Director reported to the PAB Board. ECF No. 95-2 ¶ 15; ECF No. 126 ¶¶ 15, 61; ECF No. 135-32 ¶ 61. The PAB Board gave performance evaluations to the Executive Director, and Board members could hire, fire, or otherwise alter the terms and conditions of the Executive Director's employment by a majority vote. ECF No. 95-2 ¶ 16; ECF No. 126 ¶¶ 16, 61; ECF No. 135-32 ¶ 61. Although the parties dispute who supervised Plaintiff, they agree that Kim Smith, a City Council member, understood that Plaintiff reported to the Board Chair, who would report to the PAB Board. ECF No. 127-17 at 3–4; ECF No. 126 ¶ 60; ECF No. 135-32 ¶ 60.

The parties dispute whether Plaintiff was sexually harassed by Wilson. Plaintiff argues that Wilson began to sexually harass him in October 2020 and continued to do so until 2022. ECF No. 126 ¶¶ 62–88. Plaintiff claims that Wilson made advances toward him and commented on numerous occasions about Plaintiff's sexual orientation, gender identity, dating and sex life, and appearance. *Id.* ¶¶ 63–76. Plaintiff claims that he repeatedly rejected Wilson's advances, *id.* ¶¶ 62–63, 67, 80, 85, which led Wilson to "punish[ ]" Plaintiff such as by not answering emails or phone calls, and belittling and humiliating Plaintiff in public, *id.* ¶¶ 77–79. Plaintiff claims that he was afraid of retaliation and that he believed people would not believe that a woman could sexually harass a man. *Id.* ¶¶ 81–83. Plaintiff also claims that in December 2021 or January 2022, he was diagnosed with post-traumatic stress disorder as a result of the harassment and was partially hospitalized. *Id.* ¶ 88. Defendants disagree, denying that Wilson sexually harassed Plaintiff, made inappropriate comments about him, or punished Plaintiff; rather, Defendants claim that Plaintiff and Wilson were mutually attracted to each other. ECF No. 135-32 ¶¶ 62–87; ECF No. 135-25 at 6. While Defendants agree that Plaintiff entered a partial hospitalization program in late December

2021 or early January 2022, they deny that this was due to the alleged harassment. ECF No. 135-32 ¶ 88.

On April 19, 2022, Plaintiff told Wilson that he planned to report her sexual harassment to the PAB Board. ECF No. 95-2 ¶ 24; ECF No. 126 ¶¶ 24, 99; ECF No. 135-32 ¶ 99. On April 27, 2022, PAB's Senior Staff held a meeting to discuss complaints about Plaintiff's performance. ECF No. 126 ¶ 116; ECF No. 135-32 ¶ 116. On April 28, 2022, Campbell sent a list of the Senior Staff's complaints to Wilson. ECF No. 127-37 at 2–3. On April 29, 2022, Campbell emailed Senior Staff concerns to Plaintiff. ECF No. 96-10 at 1. The same day, Wilson texted Bascoe to call her "asap" to which Bascoe replied that there were "concerns regarding the PAB and that [Bascoe] [was] communicating those concerns to both [Wilson] and [Plaintiff]." ECF No. 127-7 at 11–12; ECF No. 127-38 at 2–3. Wilson also emailed Campbell to send a meeting request to the Senior Staff to discuss their concerns and stated that she believed an executive meeting should be called. ECF No. 127-39 at 2. Wilson also called a PAB Board member and said that Plaintiff "must go." ECF No. 126 ¶ 101; ECF No. 135-32 ¶ 101.

On May 4, 2022, Plaintiff met with Senior Staff and heard their concerns. ECF No. 96-10 at 2. The same day, Chenoa Maye, the Deputy Chief of Investigations for the PAB, filed an internal complaint about Plaintiff's employment practices, alleged misuse of funds, and unauthorized practice of law. ECF No. 126 ¶ 120; ECF No. 135-32 ¶ 120. On May 5, 2022, certain Senior Staff members spoke with the PAB Board about concerns regarding Plaintiff's management and leadership. ECF No. 95-2 ¶ 29; ECF No. 126 ¶ 29. On the same day, Plaintiff told the PAB Board that Wilson had been sexually harassing him. ECF No. 95-2 ¶ 30; ECF No. 126 ¶ 30. Following his report to the PAB Board, Plaintiff reported his claim to the PAB's general counsel. ECF No. 126 ¶ 103; ECF No. 135-32 ¶ 103. On May 6, 2022, Nickoloff emailed the PAB Board:

> [W]e need to hire a lawyer, as well as vote on issuing an order for [Plaintiff] to stop playing around. . . . This isn't even about the content of his story anymore - he's

> following the same pattern we've seen since day one - doing what he wants, seeing what he can get away with, and then apologizing or crying about it after. [Plaintiff] is an adult in a prominent leadership position who is acting erraticly [sic]. We're his supervisors. We need to act.

ECF No. 127-29 at 2.

On May 9, 2022, Wilson emailed Campbell, asking "typically how long does it take for administrative leave to activate for an investigation[?]" ECF No. 127-68 at 2. That same day, Wilson, Kim Smith, Melendez, and Setel had a meeting "to discuss what exactly is happening with the staff issue." ECF No. 127-42 at 2–4. Campbell sent an email to Human Resources ("HR") and Melendez, requesting that Plaintiff be put on "paid administrative leave" because the PAB staff had a "heightened sense of anxiety, apprehension in coming to work, and fear of retaliation." ECF No. 127-43 at 2. On the same day, Plaintiff submitted an HR complaint to report sexual harassment on behalf of Marina Pacheco-Walker, the Secretary to the PAB. ECF No. 127-30 at 3–5.

On May 11, 2022, Maye filed a complaint with the City HR Department accusing Plaintiff of workplace misconduct and requesting his suspension and termination. ECF No. 126 ¶ 125; ECF No. 135-32 ¶ 125. On May 12, 2022, James Smith sent an email, which included Wilson as the recipient, stating that Melendez encouraged and advised the PAB Board members to secure an outside legal counsel for investigation and to proceed with paid administrative leave for the PAB's Executive Director. ECF No. 127-69 at 2–3. That day, Plaintiff was placed on administrative leave by the PAB Board. ECF No. 95-2 ¶ 35; ECF No. 126 ¶ 35. Bascoe functioned as the PAB Acting Manager during Plaintiff's paid administrative leave. ECF No. 95-2 ¶ 39; ECF No. 126 ¶ 39.

Plaintiff was placed on administrative leave from May 13, 2022, through November 17, 2022. ECF No. 95-2 ¶ 38; ECF No. 126 ¶ 38. Plaintiff received his full wages or salary throughout the administrative leave and had access to all of his City benefits during the period. ECF No. 96-24 at 111. However, Plaintiff's access to City systems, technology, and property was restricted, and the PAB office later returned Plaintiff's possessions to him. ECF No. 126 ¶ 131; ECF No. 135-

32 ¶ 131. Setel told PAB staff not to contact Plaintiff for any reason, such as discussing ongoing employee-related complaints and investigations, while Plaintiff was on administrative leave. ECF No. 126 ¶¶ 132–133; ECF No. 135-32 ¶¶ 132–133.

On May 13, 2022, the PAB sent out a press release about Plaintiff's administrative leave. ECF No. 127-48 at 2. Wilson, at a minimum, was informed that the press release was going out in advance. ECF No. 126 ¶ 134; ECF No. 135-32 ¶ 134. Three or four press outlets reached out to the PAB about the press release. ECF No. 126 ¶ 134; ECF No. 135-32 ¶ 134.

On May 19, 2022, the City hired the law firm Constangy, Brooks, Smith & Prophete, LLP ("Constangy") to investigate the allegations within the PAB. ECF No. 95-2 ¶ 41; ECF No. 126 ¶¶ 41, 112; ECF No. 135-32 ¶ 112. On May 31, 2022, Maye filed a New York State Division of Human Rights complaint against Plaintiff. ECF No. 127-50 at 2–10.

On June 7, 2022, Wilson wrote an email to the PAB Board and a reporter and described Plaintiff's sexual harassment complaint as "unequivocally false" and "retaliatory." ECF No. 127-63 at 2. On June 8, 2022, Plaintiff published an online article in *Medium* titled, "I Reported Sexual Harassment by My Boss. A Week Later, I Was Suspended." ECF No. 96-5 at 1–10. On June 10, 2022, Wilson resigned from the PAB Board. ECF No. 95-2 ¶ 42; ECF No. 126 ¶ 42.

On October 12, 2022, upon Bascoe's approval for distribution, the PAB released a press release that stated it had requested the New York Attorney General's Office to launch a full investigation against Plaintiff for interfering with the City's investigation. ECF No. 127-64 at 2; ECF No. 126 ¶ 155; ECF No. 135-32 ¶ 156. Press outlets, local radio stations, and smaller publications reported the press release. ECF No. 126 ¶ 157; ECF No. 135-32 ¶ 158.

At some point, Bascoe filed a complaint with the New York Attorney General regarding Plaintiff. ECF No. 126 ¶ 142; ECF No. 135-32 ¶ 142. On October 13, 2022, with the assistance of Wilson, Bascoe issued a press release denying accusations that he had been intoxicated on the job

and that such allegations were an attempt to defame him. ECF No. 126 ¶ 143; ECF No. 135-32 ¶ 143; ECF No. 127-57 at 2–3. Bascoe ultimately resigned from his role with the PAB voluntarily. ECF No. 126 ¶ 149; ECF No. 135-32 ¶ 149.

On or around November 16, 2022, the City released a redacted investigation report of Constangy. ECF No. 95-2 ¶ 43; ECF No. 126 ¶¶ 43, 144; ECF No. 135-32 ¶ 144. The report stated:

> After Plaintiff made a complaint of sexual harassment against Wilson on May 5, 2022, Wilson continued to serve on the PAB Board until she later resigned. Wilson was recused from participating in discussions regarding [Plaintiff's] employment and did not participate in the vote to place him on leave. However, she should have been temporarily removed from the PAB Board while the investigation was pending because of the actual or perceived conflict of interest.

ECF No. 127-25; ECF No. 131 at 93.

The report also found that allegations against Plaintiff of retaliation or race discrimination were unsubstantiated. ECF No. 126 ¶ 160; ECF No. 135-32 ¶ 161. On the same day, Banks shared the report on Facebook and stated, "[t]his investigation has revealed [Plaintiff] to be the dishonest, manipulative, vindictive person his ENTIRE senior staff had numerous complaints about" and that "the senior staff who reported him back in May 2022 for multiple acts a [sic] City policy violations, retaliation, racism and sexism finally feel vindicated." ECF No. 127-65 at 2.

On November 17, 2022, the PAB Board voted to terminate the employment of Plaintiff. ECF No. 95-2 ¶ 44; ECF No. 126 ¶ 44. Bascoe, Banks, Campbell, and Wilson did not cast a vote or otherwise participate in the vote; Nickoloff and Setel recused themselves and did not cast a vote. ECF No. 95-2 ¶¶ 45–46; ECF No. 126 ¶¶ 45–46. One of the grounds for Plaintiff's termination was his alleged unauthorized disclosure of non-public information with the media. ECF No. 126 ¶ 149; ECF No. 135-32 ¶ 150. Plaintiff was ultimately terminated. ECF No. 95-2 ¶ 47; ECF No. 126 ¶ 47.

On August 30, 2023, Plaintiff brought the present action in this Court. ECF No. 1. On March 5, 2024, Plaintiff amended his complaint. ECF No. 28. In the Amended Complaint, Plaintiff

brings sixteen causes of action. His claims are for (1) discrimination in violation of Title VII against the City; (2) discrimination in violation of the Equal Protection Clause against the City and Wilson pursuant to 42 U.S.C. § 1983; (3) discrimination in violation of the New York State Human Rights Law ("NYSHRL") against the City and Wilson; (4) retaliation in violation of Title VII against the City; (5) retaliation in violation of the Equal Protection Clause against all Defendants pursuant to 42 U.S.C. § 1983; (6) retaliation in violation of the First Amendment against all Defendants pursuant to 42 U.S.C. § 1983; (7) retaliation in violation of the NYSHRL against all Defendants; (8) retaliation in violation of the New York Civil Service Law § 75-b against the City; (9) defamation *per se* against the City and Campbell; (10) defamation *per se* against the City and Wilson; (11) defamation *per se* against the City, Bascoe, Nickoloff, Setel, and Banks; (12) defamation *per se* against the City and Wilson; (13) defamation *per se* against Banks; (14) Fourteenth Amendment deprivation of property claim pursuant to 42 U.S.C. § 1983 against the City, Wilson, Bascoe, Setel, and Nickoloff; (15) Fourteenth Amendment deprivation of liberty claim pursuant to 42 U.S.C. § 1983 against all Defendants; and (16) intentional infliction of emotional distress against all Defendants. ECF No. 28.

## DISCUSSION

Defendants move for summary judgment on Plaintiff's claims as described below.

### I. Claims Under Title VII

Plaintiff brings two claims under Title VII of the Civil Rights Act of 1964. His first claim alleges that the City discriminated against him on the basis of both his gender and sexual orientation in violation of Title VII. ECF No. 28 ¶ 519. Plaintiff's fourth claim alleges that the City retaliated against him in violation of Title VII because he protested unlawful discrimination. *Id.* ¶ 534. The Court discusses each claim in turn.

**A. First Claim: Discrimination in Violation of Title VII**

Plaintiff's first claim is brought only against the City and is brought pursuant to three different theories of liability. Specifically, Plaintiff alleges that the City discriminated against him on the basis of both his gender and sexual orientation by subjecting him to (1) disparate treatment, (2) *quid pro quo* sexual harassment, and (3) a hostile work environment. ECF No. 28 ¶ 519. The Court discusses each theory of liability separately below.

**1. Disparate Treatment**

The City argues that Plaintiff's claim of disparate treatment under Title VII fails because he is unable to make a *prima facie* case. ECF No. 134 at 22. "To succeed on a Title VII disparate treatment claim, a plaintiff must prove discrimination either by direct evidence of intent to discriminate or, more commonly, by indirectly showing circumstances giving rise to an inference of discrimination." *Bart v. Golub Corp.*, 96 F.4th 566, 569 (2d Cir. 2024) (quotation marks omitted) (quoting *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 270 (2d Cir. 2023)). When the plaintiff has only circumstantial, indirect evidence of a discriminatory motive, courts in this Circuit apply the framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to determine "whether the plaintiff has shown sufficient evidence of discrimination to survive summary judgment." *Id.* (citation omitted).

Under the *McDonnell Douglas* framework, "a plaintiff must first make out a *prima facie* showing of discrimination by showing that: '(1) [he] is a member of a protected class; (2) [he] is qualified for [his] position; (3) [he] suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination.'" *Banks*, 81 F.4th at 270 (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000)). Once a *prima facie* case has been shown, the burden shifts to the employer who must "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. Upon this

articulation, the burden then shifts back to the plaintiff who must show that the defendant's "stated reason for the adverse employment action was in fact pretext" for discrimination. *United States v. Brennan*, 650 F.3d 65, 93 (2d Cir. 2011) (brackets and citation omitted).

The City argues that Plaintiff is unable to make a *prima facie* case because he (i) was not qualified for the position; (ii) did not have satisfactory job performance at or close to the time of his discharge; and (iii) cannot establish an inference of discrimination on the basis of sex or sexual orientation. ECF No. 134 at 23–27. The Court discusses each argument below.

***i. Qualification for the Position***

The City argues that Plaintiff cannot prove a *prima face* case because he was not qualified for the position of Executive Director of the PAB. ECF No. 134 at 23. Specifically, they argue that at the time of his hiring, Plaintiff did not have a "Master's degree and three years of 'full-time executive level experience,'" which was listed as a minimum qualification on the vacancy announcement for the position. *Id.* at 23–24. Plaintiff does not dispute that he did not possess these qualifications at the time he was hired. ECF No. 125 at 37. Instead, he argues that he was qualified for the position because he met the basic skills necessary to perform the job. *Id.* at 37–38.

"At the summary judgment stage, a plaintiff may satisfy [the job qualification] burden by showing that [he] possesses the basic skills necessary for performance of the job." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015) (quotation marks, brackets, and citation omitted). "[T]he qualification necessary to shift the burden to defendant for an explanation of the adverse job action is minimal[.]" *Slattery v. Swiss Reinsurance Am. Corp.,* 248 F.3d 87, 92 (2d Cir. 2001). "[W]here discharge is at issue and the employer has already hired the employee, the inference of minimal qualification is not difficult to draw." *Id.*

Here, it is undisputed that despite Plaintiff not having the qualifications listed on the vacancy announcement, he was nevertheless hired to be the Executive Director of the PAB. ECF

No. 95-2 ¶¶ 8, 13. Additionally, he remained in that role for more than two years. *Id.* ¶ 13. Therefore, the Court concludes that Plaintiff has satisfied the minimal burden of showing that he possessed the basic skills necessary for performance of the job. *See Jones v. N.Y. City Dep't of Educ.*, No. 16-CV-1149, 2021 WL 602695, at *2 (E.D.N.Y. Feb. 21, 2021) (holding that a defendant's argument that the plaintiff was not a licensed teacher did not undermine the plaintiff's ability to establish that he was qualified for the position of long-term substitute teacher). Therefore, the Court concludes that the City is not entitled to summary judgment on this basis.

***ii. Satisfactory Performance***

Second, the City argues that Plaintiff cannot prove a *prima facie* case because he was not satisfactorily performing his job at the relevant time, rendering him unable to demonstrate that he was qualified for the position of Executive Director. ECF No. 134 at 25. In most discrimination cases, the second element to establish a *prima facie* case is described as whether the plaintiff is "qualified for the position." *Dobbins. v. Am. Red Cross*, No. 12-CV-6364, 2017 WL 1046750, at *5 (W.D.N.Y. Mar. 20, 2017). However, it is also true that some cases have instead used the language "performing satisfactorily" to describe the standard. *See id.* Nevertheless, in *Slattery*, the Second Circuit directly addressed the usage of these two phrases in the context of a plaintiff's *prima facie* case. 248 F.3d at 91–92. In that case, the Second Circuit explained that while it had used the phrases "qualified for the position" and "performing his duties satisfactorily" interchangeably, this variation in terminology did not raise the standard set by the Supreme Court for what suffices to show qualification. *Id.* Therefore, it explained that regardless of the terminology used, in order to satisfy the qualification prong, plaintiff need only show that he "possesses the basic skills necessary for performance of the job." *Id.* (brackets and citation omitted).

As such, the Court rejects the City's argument that Plaintiff was unqualified because he was not satisfactorily performing his job. As the Second Circuit explained, a plaintiff need only show that he "possesses the basic skills necessary for performance of the job." *Id.* (brackets and citation omitted). As explained above, Plaintiff has done so here. *See* Part I Section A.1.i. Consequently, the Court concludes that the City is not entitled to summary judgment on this basis.

***iii. Inference of Discrimination***

Third, the City argues that Plaintiff cannot establish an inference of discrimination on the basis of sex or sexual orientation because he has failed to identify someone who was similarly situated and more favorably treated. ECF No. 134 at 25–27. In response, Plaintiff argues that his claim for disparate treatment does not rest on a comparison between himself and another individual. ECF No. 125 at 44. Instead, it is brought based on Wilson's actions such as her reference to Plaintiff as a "unicorn" when he stated that he was bisexual, and Wilson subjecting Plaintiff to "explicitly gendered sexual behavior in the workplace, touching him sexually, propositioning him and making it clear he was expected to be a romantic foil—and then subjecting him to 'punishments' when he failed to comply." *Id.* at 44–45. In its reply, the City responds that Wilson was not Plaintiff's supervisor, and therefore, his claim fails because Wilson's actions cannot be imputed to the City. ECF No. 135 at 11.

As an initial note, because Plaintiff states that his claim of disparate treatment is not based on the theory that someone else was more favorably treated, the Court rejects that portion of the City's argument. As for the City's argument that Plaintiff's claim fails because Wilson was not Plaintiff's supervisor, "an employee is a 'supervisor' for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim." *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). Further, "[e]ven if an individual does not have the sole authority to hire or fire an employee, the individual may still be considered to be

a supervisor." *Goffe v. NYU Hosp. Ctr.*, 201 F. Supp. 3d 337, 356 (E.D.N.Y. 2016); *see Preuss v. Kolmar Lab'ys., Inc.*, 970 F. Supp. 2d 171, 187 (S.D.N.Y. 2013) (holding that being able to recommend an adverse employment action may be sufficient to constitute a "supervisor"). Whether a defendant had "enough authority to qualify as [a] supervisor[ ] is a question of fact for the jury." *Goffe*, 201 F. Supp. 3d at 356; *see Lolonga-Gedeon v. Child & Fam. Servs.*, 144 F. Supp. 3d 438, 441 (W.D.N.Y. 2015) ("Courts in this Circuit have declined to grant summary judgment . . . where there is evidence that the alleged harasser had the ability to recommend the plaintiff[']s termination."). While the City proffers evidence that Wilson did not possess enough authority to be Plaintiff's supervisor, ECF No. 135 at 12–14, it is undisputed that Plaintiff was supervised by and reported to the entire PAB Board and that Wilson was a PAB Board Member while Plaintiff was the Executive Director, ECF No. 126 ¶¶ 49, 61; ECF No. 135-32 ¶¶ 49, 61. Based on this evidence, a reasonable jury could conclude that Wilson had enough authority to qualify as a supervisor. Thus, there are material questions of fact related to whether Wilson was Plaintiff's supervisor and summary judgment is not warranted on this basis.

**2. *Quid Pro Quo* Sexual Harassment**

The City argues that Plaintiff's claim for *quid pro quo* sexual harassment under Title VII fails because Wilson was not Plaintiff's supervisor and because Plaintiff cannot prove that Wilson made any changes to his employment based on his refusals to acquiesce to a romantic relationship. ECF No. 134 at 27–30. As for the City's argument that Wilson was not Plaintiff's supervisor, as the Court explained above, *see* Part I Section A.1.iii, there are material questions of fact related to whether Wilson was Plaintiff's supervisor and summary judgment is not warranted on this basis.

As for the City's argument that Plaintiff cannot prove that Wilson made any changes to his employment based on his refusals to acquiesce to a romantic relationship, the Court also rejects

this argument.[2] "*Quid pro quo* sexual harassment occurs when 'submission to or rejection of unwelcome sexual conduct by an individual is used as the basis for employment decisions affecting such individual.'" *Girardi v. Ferrari Express, Inc.*, No. 20-CV-4298, 2023 WL 2744027, at *5 (S.D.N.Y. Mar. 31, 2023) (brackets omitted) (quoting *Karibian v. Columbia Univ.*, 14 F.3d 773, 777 (2d Cir. 1994)). "To establish *quid pro quo* harassment under Title VII . . ., 'it is enough to show that the supervisor used the employee's acceptance or rejection of his advances as the basis for a decision affecting the compensation, terms, conditions or privileges of the employee's job.'" *Friederick v. Passfeed, Inc.*, No. 21-CV-2066, 2022 WL 992798, at *7 (S.D.N.Y. 2022) (quoting *Perks v. Town of Huntington*, 251 F. Supp. 2d 1143, 1154–55 (E.D.N.Y. 2003)).

Here, the City argues that Plaintiff cannot prove that Wilson made any substantial changes to the terms and conditions of employment. ECF No. 134 at 28–30. However, Plaintiff has proffered evidence that Wilson participated in conversations with decisionmakers regarding suspending him and his termination. *See* Def. Exhs. 19, 42, 57, 59, 68. As such, the Court concludes that a reasonable juror could find that that Wilson "used the [Plaintiff's] acceptance or rejection of [her] advances as the basis for a decision affecting the compensation, terms, conditions or privileges of [Plaintiff's] job." *Friederick*, 2022 WL 992798, at *7. Therefore, the City is not entitled to summary judgment on this basis.

**3. Hostile Work Environment**

The City argues that Plaintiff's hostile work environment claim fails because (i) the allegedly abusive actions did not permeate the workplace or create an abusive workplace; (ii) the actions were not based on sex or sexual orientation; and (iii) the City can establish a *Faragher-Ellerth* defense. ECF No. 134 at 30–37. The Court discusses each argument below.

---

[2] Defendants repeatedly argue that a suspension with pay does not constitute an adverse employment action. *See e.g.,* ECF No. 134 at 41. For the purposes of this motion, the Court need not decide whether a suspension with pay constitutes an adverse employment action because even assuming that it does not, Defendants' arguments still fail given that Plaintiff was ultimately terminated.

***i. Conduct Did Not Permeate the Workplace or Create an Abusive Workplace***

The City first argues that Plaintiff cannot prove his hostile work environment claim because the allegedly abusive actions did not permeate the workplace or create an abusive workplace. *Id.* at 30–32. At the summary judgment stage, a plaintiff asserting a hostile work environment claim must produce sufficient evidence from which a reasonable trier of fact could conclude that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) (quotation marks and citation omitted). This means that "the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014).

Whether workplace discrimination is sufficiently severe or pervasive depends on the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). "Generally, unless an incident of harassment is sufficiently severe, 'incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010) (quotation omitted). Ultimately, the severity requirement is "demanding to ensure that Title VII does not become a 'general civility code.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quotation omitted).

Here, Plaintiff has proffered evidence that (1) he was being propositioned for sex, Def. Exh. 14 at 13; (2) on at least two occasions Wilson grinded her body against his, Def. Exh. 14 at 14; (3)

Wilson was "touchy" with him on his shoulders, arms, and hands on multiple occasions, Def Exh. 15 at 37; (4) Wilson made multiple attempts to control Plaintiff's sex life, *id.* at 45; (5) Wilson initiated at least 20 unsolicited discussions of sex, sexual preferences, and sex lives, *id.* at 44; (6) Wilson made at least a dozen comments on his weight and appearance, *id* at 35; and (7) Wilson subjected him to workplace punishment for failing to accede to her romantic and sexual demands, Def. Exh. 14 at 5. The Court concludes that based on this evidence, a reasonable juror could conclude that the workplace was "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Rivera*, 743 F.3d at 20 (quotation omitted). As such, the City is not entitled to summary judgment on this basis.

***ii. Actions Based on Sex or Sexual Orientation***

Second, the City argues that Plaintiff cannot prove that the complained-of actions were based on sex or sexual orientation. ECF No. 134 at 32–33. "[I]t is 'axiomatic' that in order to establish a sex-based hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of [his] sex." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (quoting *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)). Here, Plaintiff has provided evidence that Wilson referred to Plaintiff as a "unicorn" when he stated that he was bisexual, and reacted violently when he tried to date another woman. Def. Exh. 20 ¶¶ 6–10. He has also proffered evidence that could suggest that Wilson subjected him to explicitly gendered sexual behavior in the workplace, such as touching him sexually, propositioning him, and then subjecting him to "punishments" when he failed to comply. Def. Exh. 14 at 5, 13, 14; Def Exh. 15 at 37, 44, 45. Based on this evidence, a reasonable jury could conclude that that the complained-of actions were based on Plaintiff's sex or sexual orientation. Therefore, the City is not entitled to summary judgment on this basis.

***iii. Faragher-Ellerth Defense***

Third, the City argues that it is entitled to a *Faragher-Ellerth* defense. ECF No. 134 at 34–37. "In *Faragher* and *Ellerth,* the Supreme Court established an affirmative defense to an employer's vicarious liability for a hostile work environment created by a supervisor of the plaintiff employee." *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 50 (2d Cir. 2012). To raise such a defense successfully, the employer must demonstrate: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher,* 524 U.S. at 807; *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 765 (1998). Nevertheless, "[n]o affirmative defense is available[ ] . . . when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." *Faragher*, 524 U.S. at 808; *Ellerth*, 524 U.S. at 765. In this case, Plaintiff argues that the *Faragher-Ellerth* defense is inapplicable because Plaintiff was suspended and ultimately terminated as a result of Wilson's harassment and for raising his sexual harassment complaint. ECF No. 125 at 57, 77.

The Court concludes that the City is not entitled to summary judgment on the basis of its *Faragher-Ellerth* defense. In order to prove its *Faragher-Ellerth* defense, the City would need to demonstrate that Wilson's harassment did not culminate in a tangible employment action. As explained above, there are issues of material fact as to whether Wilson was involved in Plaintiff's suspension and termination. *See* Part I Section A.2. Thus, the City is not entitled to summary judgment on this basis.

**B. Fourth Claim: Retaliation in Violation of Title VII**

Plaintiff's fourth claim is against the City for retaliation in violation of Title VII. ECF No. 28 ¶ 534. The City argues that this claim must be dismissed because (1) Plaintiff has failed to

establish a *prima facie* case because he has not established that a retaliatory motive is the but for cause of the adverse employment action; and (2) because the City has objective, non-retaliatory reasons for all its actions. ECF No. 134 at 41–46.

The three-step burden-shifting framework laid out in *McDonnell Douglas* governs retaliation claims under Title VII. 411 U.S. 792. To establish a *prima facie* case of retaliation under Title VII, the plaintiff must show that: (1) "he was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Rivera*, 743 F.3d at 24 (brackets and quotation omitted). Once the plaintiff establishes a *prima facie* case, the employer "must proffer a legitimate, non-discriminatory reason for the adverse action. If it does so, then the burden shifts back to the [employee] to demonstrate pretext." *Verga v. Emergency Ambulance Serv., Inc.*, No. 12-CV-1199, 2014 WL 6473515, at *3 (E.D.N.Y. Nov. 18, 2014) (brackets omitted) (quoting *Slattery*, 248 F.3d at 94–95).

"A plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action. From such discrepancies, a reasonable juror could conclude that the explanations were a pretext for a prohibited reason." *Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 846 (2d Cir. 2013). "However, 'but-for' causation does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Id.* (footnote omitted). The Court uses the same analysis when determining whether Plaintiff has made a *prima facie* case by demonstrating that a retaliatory motive is the but for cause of the adverse employment action and whether the objective, non-retaliatory reason offered by a defendant is pretextual. *See id.* at 847. Therefore, the Court will consider the City's two arguments together.

The City argues that it is entitled to summary judgment because it terminated Plaintiff based on complaints from the PAB's Senior Staff and the findings in the Constangy investigation report, which substantiated the complaints. ECF No. 134 at 42, 45. In response, Plaintiff proffers evidence that (1) Wilson testified that Plaintiff was put on leave because he disseminated his sexual harassment complaint, Def. Exh. 19 at 6–7; (2) Plaintiff protested to Wilson that he would not date her and would report her for sexual harassment on April 19, 2022, to which Wilson immediately responded, "I'm going to hurt you because you hurt me," Def. Exh. 14 at 28–29; (3) within two weeks Wilson had criticized Plaintiff's work performance and begun to solicit complaints from PAB staff, Def Exh. 34 at 3–4; (4) Wilson received, supposedly unprompted, a list of complaints about Plainitff on April 28, 2022, and then was the one to call for an "executive session" to air these grievances against Plaintiff, Def. Exh. 37; (5) Plaintiff formally reported his sexual harassment to the PAB Board on May 5, 2022, and was then prevented from talking about his sexual harassment complaint to his coworkers within days, Def Exh. 14 at 59; (6) Plaintiff was suspended a mere seven days after lodging his complaint, on May 12, 2022, ECF No. 95-2 ¶ 35; ECF No. 126 ¶ 35; (7) by the end of May 2022, the PAB had issued a press release stating that Plaintiff was transitioning out of his role, Def. Exh. 48; and (8) within six months of filing his complaint, Plaintiff had been terminated, ECF No. 95-2 ¶ 47; ECF No. 126 ¶ 47. Based on this evidence, a reasonable jury could conclude that Plaintiff's termination would not have occurred in the absence of the retaliatory motive. *See Kwan*, 737 F.3d at 846. Consequently, the City is not entitled to summary judgment on this basis.

## II. Claims Under NYSHRL

Plaintiff brings two claims under the NYSHRL. Plaintiff's third claim alleges that the City and Wilson discriminated Plaintiff on the basis of both his gender and sexual orientation in violation of the NYSHRL by subjecting him to an unlawful hostile work environment, *quid pro*

*quo* sexual harassment, and disparate treatment. ECF No. 28 ¶ 529. Plaintiff further alleges in this claim that the City and Wilson aided and abetted this unlawful conduct. *Id.* Plaintiff's seventh claim is that all Defendants retaliated against him in violation of the NYSHRL because he protested unlawful discrimination. *Id.* ¶ 549.

## A. Third Claim: Discrimination in Violation of the NYSHRL

Plaintiff's third claim is brought only against the City and Wilson and is brought pursuant to four different theories of liability. Plaintiff alleges that the City and Wilson discriminated against him on the basis of both his gender and sexual orientation by subjecting him to (1) a hostile work environment, (2) *quid pro quo* sexual harassment, (3) disparate treatment, and (4) by aiding and abetting this unlawful conduct. ECF No. 28 ¶ 529. The Court discusses each theory of liability below.[3]

### 1. Disparate Treatment

The City and Wilson argue that they are entitled to summary judgment on Plaintiff's NYSHRL disparate treatment claim for the same reasons as the Court discussed in its analysis of Plaintiff's Title VII disparate treatment claim. ECF No. 134 at 23–27. For the same reasons as discussed above, *see* Part I Section A.1, the Court concludes that the City and Wilson are not entitled to summary judgment on Plaintiff's NYSHRL disparate treatment claim on the basis that Plaintiff was not qualified for the position, did not have satisfactory job performance at or close to the time of his discharge, and cannot establish an inference of discrimination on the basis of sex or sexual orientation.

[3] Wilson also argues that she cannot be held liable under the NYSHRL because she is an individual and not the employer. ECF No. 134 at 38. However, "[a] supervisor is an employer for purposes of establishing liability under the NYSHRL if that supervisor actually participates in the conduct giving rise to the discrimination." *Feingold v. New York*, 366 F.3d 138, 157 (2d Cir. 2004) (citation modified). As the Court discussed above, *see* Part I Section A.1.iii, there are questions of material fact related to whether Wilson was Plaintiff's supervisor. As such, the Court concludes that Wilson is not entitled to summary judgment on the basis that she is an individual and not the employer.

**2. *Quid Pro Quo* Sexual Harassment**

The City and Wilson argue that they are entitled to summary judgment on Plaintiff's NYSHRL *quid pro quo* sexual harassment claim for the same reasons as the Court discussed in its analysis of Plaintiff's Title VII disparate treatment claim. ECF No. 134 at 28–30. For the same reasons as discussed in Part I Section A.2, the Court concludes that the City and Wilson are not entitled to summary judgment on Plaintiff's NYSHRL *quid pro quo* sexual harassment claim on the basis that Plaintiff Wilson was not Plaintiff's supervisor and because Plaintiff cannot prove that Wilson made any changes to his employment based on his refusals to acquiesce to a romantic relationship.

**3. Hostile Work Environment**

The City and Wilson argue that they are entitled to summary judgment on Plaintiff's NYSHRL hostile work environment claim because Wilson was not a supervisor and the City is entitled to a *Faragher-Ellerth* defense. ECF No. 135 at 14–21. For the same reasons as discussed above, *see* Part I Section A.3, the Court concludes that the City is not entitled to summary judgment on Plaintiff's NYSHRL hostile work environment claim on the basis that Wilson was not a supervisor and the City is entitled to a *Faragher-Ellerth* defense.

**4. Aiding and Abetting**

Wilson argues that because the underlying claims fail under the NYSHRL, the claim against her for aiding and abetting also fails. ECF No. 134 at 39. Because the Court has concluded that the City and Wilson are not entitled to summary judgment on the underlying NYSHRL claim, the Court concludes that Wilson is not entitled to summary judgment on this basis.

**B. Seventh Claim: Retaliation in Violation of the NYSHRL**

Plaintiff's seventh claim is that all Defendants retaliated against him in violation of the NYSHRL because he protested unlawful discrimination. ECF No. 28 ¶ 549. Defendants argue that

they are entitled to summary judgment on this claim because (1) Plaintiff has failed to establish a *prima facie* case because he has not established that a retaliatory motive is the but for cause of the adverse employment action; and (2) because the City has objective, non-retaliatory reasons for all its actions. ECF No. 134 at 41–46. Plaintiff argues that if Defendants' arguments are insufficient to warrant summary judgment based on the Title VII retaliation claim, then they are insufficient to warrant summary judgment on the NYSHRL retaliation claim because the NYSHRL does not require but for causation. ECF No. 125 at 67. The Court agrees with Plaintiff.

In 2019, the NYSHRL was amended to align with the more liberal pleading standard of the New York City Human Rights Law ("NYCHRL"). *See Owens v. Delta Airlines, Inc.*, No. 23-CV-2114, 2025 WL 278024, at *4 (E.D.N.Y. Jan. 23, 2025). Thus, when considering a claim of retaliation under the NYSHRL, the Court applies the NYCHRL standard, which "imposes an identical standard" as Title VII with two exceptions. *Maynard v. Montefiore Med. Ctr.*, No. 18-CV-8877, 2021 WL 396700, at *6 (S.D.N.Y. Feb. 4, 2021). The first exception relates to the third element of a *prima facie* case. Instead of plaintiff having to "prove any 'adverse' employment action; instead, he must prove that something happened that would be reasonably likely to deter a person from engaging in protected activity." *Leon v. Columbia Univ. Med. Ctr.*, No. 11-CV-8559, 2013 WL 6669415, at *12 (S.D.N.Y. Dec. 17, 2013), *aff'd*, 597 F. App'x 30 (2d Cir. 2015) (internal quotation marks and citation omitted). Second, "the NYCHRL does not require a plaintiff to show but-for causation. Instead, summary judgment is appropriate only if the plaintiff cannot show that retaliation played any part in the employer's decision." *Maynard*, 2021 WL 396700, at *6.

As discussed above, the Court has concluded that Defendants have not shown that they are entitled to summary judgment on the basis that Plaintiff cannot show but for causation, and therefore, for the same reasons, and in light of the lower standard of causation under the NYSHRL, Defendants are not entitled to summary judgment on this basis as to the NYSHRL retaliation claim.

*See* Part I Section B. Additionally, for the reasons described above, *see* Part I Section B, Defendants are not entitled to summary judgment on the basis that they have offered non-retaliatory reasons for all their actions.

## III. Claim Under New York Civil Service Law § 75-b

Plaintiff's eighth claim alleges that the City retaliated against him in violation of the New York Civil Service Law § 75-b. ECF No. 28 ¶ 554. The Court discusses this claim below.

### A. Eighth Claim: Retaliation in Violation of New York Civil Service Law § 75-b

The City argues that it is entitled to summary judgment for Plaintiff's claim under the New York Civil Service Law § 75-b because (1) Plaintiff's reports did not concern dangers to public safety or health; (2) Plaintiff could not reasonably believe his report concerned "improper government action" because he knew that Wilson was not his employer, an employee of his employer, or an agent of either; and (3) Plaintiff cannot establish but for causation. ECF No. 134 at 93–98. The Court discusses each of these arguments in turn.

#### 1. Danger to Public Safety or Health

The City first argues that it is entitled to summary judgment because Plaintiff's reports did not concern dangers to public safety or health. *Id.* at 93–95. In order to state a claim under § 75-b:

> [a] plaintiff must allege the following: (1) an adverse personnel action; (2) disclosure of information to a governmental body (a) regarding a violation of a law, rule, or regulation that endangers public health or safety, or (b) which [he] reasonably believes constitutes an improper governmental action; and (3) a causal connection between the disclosure and the adverse personnel action.

*Wetzel v. Town of Orangetown*, No. 06-CV-6117, 2010 WL 743039, at *17 (S.D.N.Y. Mar. 2, 2010) (quotation omitted). Therefore, a claim under § 75-b can proceed either under the theory that there was a violation of a law, rule, or regulation that endangers public health or safety, or under the theory that the plaintiff reasonably believed that an action constituted improper governmental action. *See id.* In this case, Plaintiff is proceeding under the theory that he reasonably believed that

an action constituted improper governmental action. *See* ECF No. 125 at 97–98. As such, the City is not entitled to summary judgment on the basis that Plaintiff's reports did not concern dangers to public safety or health.

**2. Improper Government Action**

Second, the City argues that it is entitled to summary judgment because Plaintiff could not reasonably believe that his report concerned an "improper government action" because he knew that Wilson was not his employer, an employee of his employer, or an agent of either. ECF No. 134 at 95–97. As discussed above, there are questions of material fact related to Wilson's role as a PAB Board member. *See* Part I Section A.1.iii. It is undisputed that Plaintiff was "supervised by and reported to the entire PAB Board" and that Wilson was a PAB Board member, and specifically Chair of the PAB Board while Plaintiff was the Executive Director. ECF No. 126 ¶¶ 49, 61; ECF No. 135-32 ¶¶ 49, 61. Based on this evidence, a reasonable jury could conclude that it was reasonable for Plaintiff to believe that Wilson was an agent of the City. Therefore, the City is not entitled to summary judgment on this basis.

**3. But For Causation**

Third, the City argues that it is entitled to summary judgment because Plaintiff cannot prove that his protected activity was the but for cause of the adverse personnel action. ECF No. 134 at 97–98. The City raised this same argument in its discussion of Plaintiff's Title VII retaliation claim. As the Court explained above, *see* Part I Section B, Plaintiff has proffered sufficient evidence such that a reasonable jury could conclude that Plaintiff's termination would not have occurred but for Plaintiff's protected conduct. Therefore, the City is not entitled to summary judgment on this basis.

## IV. Claims Under 42 U.S.C. § 1983

Plaintiff's second claim is for discrimination in violation of the Equal Protection Clause against the City and Wilson. ECF No. 28 ¶ 524. Plaintiff's fifth claim is for retaliation in violation

of the Equal Protection Clause against all Defendants. *Id.* ¶ 539. Plaintiff's sixth claim is for retaliation in violation of the First Amendment against all Defendants. *Id.* ¶ 544. Plaintiff's fourteenth claim is for deprivation of property against the City, Wilson, Bascoe, Setel, and Nickoloff. *Id.* ¶ 599. And Plaintiff's fifteenth claim is for deprivation of liberty against all Defendants. *Id.* ¶ 608. These five claims are all brought pursuant to 42 U.S.C. § 1983. The Court addresses each claim below.

**A. Second Claim: Violation of the Fourteenth Amendment's Equal Protection Clause**

Plaintiff's second claim alleges that the City and Wilson discriminated against Plaintiff on the basis of his gender and sexual orientation in violation of the Equal Protection Clause by subjecting him to an unlawful hostile work environment, *quid pro quo* sexual harassment, and discriminatory disparate treatment. ECF No. 28 ¶ 524. The City and Wilson argue that they are entitled to summary judgment (1) because Wilson is entitled to qualified immunity; (2) because Wilson was not acting under color of state law; (3) for the same reasons as articulated in their discussion of Plaintiff's Title VII claims; (4) because Wilson was not personally involved; and (5) because Plaintiff has failed to prove his claim against the City. ECF No. 134 at 46–55. The Court addresses each of these arguments below.

**1. Qualified Immunity**

Wilson argues that she is entitled to qualified immunity on Plaintiff's second claim because it was not clearly established law that a claim was available under § 1983 for discrimination on the basis of sexual orientation at the time of the events of this case. ECF No. 134 at 51–52. In making this argument, Wilson relies on the Second Circuit case *Naumovski v. Norris*, 934 F.3d 200 (2d Cir. 2019). The Court agrees.

The doctrine of qualified immunity shields government officials from civil damages liability unless "the official violated a statutory or constitutional right that was clearly established

at the time of the challenged conduct." *Soto v. Gaudett*, 862 F.3d 148, 156 (2d Cir. 2017) (internal quotation marks and quotation omitted). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (internal quotation marks and quotation omitted). "To determine whether a defendant is entitled to qualified immunity, courts ask whether the facts shown 'make out a violation of a constitutional right' and 'whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct.'" *Estate of Devine*, 676 F. App'x 61, 62 (2d Cir. 2017) (summary order) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). For a right to be clearly established, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). It is not necessary to find a "case directly on point" to show that the law governing a plaintiff's claim is clearly established, but existing precedent must have placed the constitutional right "beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Additionally, the right must have been recognized by either the Supreme Court or the Second Circuit. *See id.*

The Court cannot find and Plaintiff does not point to any Second Circuit or Supreme Court case that has explicitly recognized a § 1983 claim for sexual orientation discrimination in public employment. Indeed, the Second Circuit in *Naumovski,* stated that to date in 2019, "neither this court nor the Supreme Court has recognized § 1983 claims for sexual orientation discrimination in public employment." 934 F.3d at 219. Therefore, to the extent that Plaintiff's Equal Protection claim is premised on sexual orientation discrimination, Wilson is entitled to summary judgment on the basis that she is entitled to qualified immunity. Nevertheless, this claim is also premised on discrimination based on sex. Wilson has made no arguments that she is entitled to summary judgment on the basis of qualified immunity as it relates to Plaintiff's claim based on sex

discrimination. As such, to the extent this claim is brought based on sex discrimination, it shall proceed to trial.

### 2. Color of State Law

Wilson argues that she cannot be held liable for this claim because she was not acting under color of state law, which is a requirement for any claim under 42 U.S.C. § 1983. ECF No. 134 at 46. It is true that to state a cause of action under 42 U.S.C. § 1983, a plaintiff must allege that the challenged conduct was attributable to a person acting under color of state law. *See Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999). Here, Wilson argues that she was not acting under color of state law because she was an unpaid volunteer of the PAB and could not impact the terms of Plaintiff's employment independently. ECF No. 134 at 47–48. However, Wilson cites no case law to support the proposition that an unpaid volunteer who acts as a member of the board of an office of and within a municipal corporation cannot be acting under color of state law solely because she is a volunteer. As such, the Court concludes that Wilson is not entitled to summary judgment on this basis.

### 3. Reasons Articulated in Discussion of Title VII

The City and Wilson argue that for the same reasons as discussed in their arguments related to Title VII, Plaintiff's Equal Protection Claim fails. ECF No. 134 at 49–51. Specifically, they argue that Plaintiff cannot prove his claim because Plaintiff (1) was not qualified to be Executive Director; (2) was not similarly situated to anyone;[4] (3) did not sufficiently prove that harassment and hostility permeated the workplace; (4) was not supervised by Wilson and Wilson did not make any substantial changes to the terms and conditions of his employment; and (5) did not sufficiently

[4] In this section, Wilson also argues that this claim fails because Plaintiff has failed to identify a similarly situated colleague to support his claim and "class-of-one" equal protection claims may not arise out of public employment. ECF No. 134 at 49. However, a class-of-one claim only exists "where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment" and the plaintiff is not alleging that he is a part of a protected class. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Here, Plaintiff's claim is that he was discriminated against because he is a member of a protected class. Therefore, it is not a class-of-one claim, and the Court rejects this argument.

prove that the alleged hostility and harassment were based on sex or sexual orientation. *Id.* For the same reasons as discussed in the Court's analysis of Plaintiff's Title VII harassment claims, *see* Part I Section A, the Court concludes that the City and Wilson are not entitled to summary judgment on these grounds.

**4. Personal Involvement**

Wilson argues that she cannot be held liable under 42 U.S.C. § 1983 because she was not personally involved in the adverse employment actions underlying Plaintiff's second claim. ECF No. 134 at 50. As the Court explained above, *see* Part I Section A.2, Plaintiff has proffered evidence that Wilson participated in conversations with decisionmakers regarding suspending him and his termination. *See* Def. Exhs. 19, 42, 57, 59, 68. Therefore, questions of fact exist related to whether Wilson was personally involved in the adverse employment action, and summary judgment is not warranted on this basis.

**5. Municipal Liability**

The City argues that it cannot be held liable for Wilson's actions pursuant to 42 U.S.C. § 1983 under a theory of *respondeat superior*. ECF No. 134 at 52. Plaintiff responds that he has sufficiently proven municipal liability because the PAB Board was a final policymaker and because of the City's failure to train. ECF No. 125 at 72–74. The Court disagrees.

Where a plaintiff seeks to hold a municipality liable for a "single decision by [a] municipal policymaker[ ]," *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986), the plaintiff must show that the official had final policymaking power, *see City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988). An official has final authority if his decisions, at the time they are made, "may fairly be said to represent official policy." *McMillian v. Monroe Cnty.*, 520 U.S. 781, 784 (1997). Whether an official has final policymaking authority is a legal question, determined on the basis of state law. *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000).

"The critical characteristic of final policymakers when employment is at issue is whether the municipal official has the authority to formulate the rules governing personnel decisions rather than the authority to make decisions pursuant to those rules—e.g., the hiring and firing of subordinates." *Chin v. N.Y.C. Hous. Auth.*, 575 F. Supp. 2d 554, 562 (S.D.N.Y. 2008). Therefore, to survive summary judgment, a Plaintiff must prove that the official did not merely have "discretion to hire and fire employees," but must instead show that such official was the "official responsible for establishing . . . employment policy." *Pembaur*, 475 U.S. at 483 n.12. Proving that the official in question was a "final decisionmaker," does not prove that the official was a "final policymaker." *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 92, 100 (2d Cir. 2020).

Here, Plaintiff only contends that the PAB Board is statutorily empowered to make the policy decision to fire the Executive Director. ECF No. 125 at 73. And he relies on the undisputed fact that the PAB Board was the ultimate decision-maker as to the agency's work to support his contention. ECF No. 126 ¶ 57; ECF No. 135-32 ¶ 57. As explained above, that is insufficient to prove that an official was a final policymaker for the purposes of holding a municipality liable under 42 U.S.C. § 1983. *See Agosto*, 982 F.3d at 100 ("[B]y equating a final decisionmaker with a final policymaker, [plaintiff's] approach would effectively impose *respondeat superior* liability—making the municipality liable for the conduct of its employees—in violation of *Monell* itself."). Plaintiff proffers no other evidence that the PAB was a final policymaker and as such, the Court concludes that the City cannot be held liable under 42 U.S.C. § 1983 on the basis that the PAB was the final policymaker.

Alternatively, Plaintiff argues that he can establish municipal liability through a failure to train theory, arguing that while a pattern of similar violations is usually required to establish municipal liability, this case falls into the narrow range of circumstances where a pattern of similar violations is not necessary. *See* ECF No. 125 at 73–74. Specifically, Plaintiff points to the single

incident liability that the Supreme Court hypothesized in *City of Canton v. Harris,* 489 U.S. 378, 390 (1989). In *Canton*, the Supreme Court left open the possibility that a pattern of similar violations might not be necessary to establish municipal liability where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* In *Canton*, the Court posed a hypothetical example of a city that arms its police with firearms and deploys the armed officers to capture fleeing felons without training the officers in the constitutional limitations on the use of deadly force. *See id.* n.10. Plaintiff argues that his case falls into the narrow exception envisioned in *Canton* because the City failed to provide any sexual harassment training to PAB Board Members. ECF No. 125 at 74.

The Court disagrees. Plaintiff has not provided evidence that his failure to train claim falls into the narrow circumstances hypothesized in *Canton.* Here, while the PAB Board Members' exact relationship to the City and to what extent the City can be held liable for their actions is disputed, it is undisputed that the PAB Board Members were unpaid volunteers. ECF No. 126 ¶ 3. It simply cannot be said that the need for the City to provide sexual harassment training to unpaid volunteers was so obvious and so likely "to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390. This is especially true given that the City has a sexual harassment policy. Pla. Exh. 5. As such, the Court concludes that Plaintiff has failed to proffer evidence sufficient to hold the City liable for his second claim pursuant to 42 U.S.C. § 1983. Accordingly, the Court grants the City summary judgment on Plaintiff's second claim.

**B. Fifth Claim: Retaliation in Violation of the Fourteenth Amendment's Equal Protection Clause**

Plaintiff's fifth claim alleges retaliation in violation of the Equal Protection Clause due to Plaintiff protesting unlawful discrimination against all Defendants. ECF No. 28 ¶ 539. Defendants argue that they are entitled to summary judgment (1) for the same reasons as they discussed in relation to Plaintiff's Title VII retaliation claim; (2) because Defendants were not acting under color of state law; and (3) because Plaintiff cannot prove the City caused the constitutional violation. ECF No. 134 at 52–54.

**1. Reasons Articulated in Discussion of Title VII Retaliation Claim**

The Individual Defendants argue that for the same reasons as discussed in their arguments related to Plaintiff's Title VII retaliation claim, Plaintiff's Equal Protection retaliation claim fails. *Id.* 52–53. Specifically, they argue that Plaintiff cannot prove his claim because (1) Plaintiff cannot establish causation; and (2) the City has objective reasons for their actions. *Id.* For the same reasons as discussed in the Court's analysis of Plaintiff's Title VII retaliation claim, *see* Part I Section B, the Court concludes that the Individual Defendants are not entitled to summary judgment on these grounds.

**2. Under Color of State Law**

The Individual Defendants argue that they cannot be held liable under 42 U.S.C. § 1983 because they were not acting under color of state law. ECF No. 134 at 53. It is true that to state a cause of action under 42 U.S.C. § 1983, a plaintiff must allege that the challenged conduct was attributable to a person acting under color of state law. *See Snider*, 188 F.3d at 53. However, in this case, the Individual Defendants have failed to raise a viable argument that they were not acting under color of state law and thus are not entitled to summary judgment on this basis.

First, the Individual Defendants argue that they were not state employees, "so they do not satisfy the color of law the requirement on that basis." ECF No. 134 at 53. They cite no case law

to support the proposition that one must be an employee to be acting under color of state law and as such, are not entitled to summary judgment on that basis. Second, they argue that Defendants Bascoe, Banks, and Campbell were PAB employees and did not have any authority in the PAB, let alone authority conferred by the state. *Id.* This seems to contradict their earlier argument that none of the Individual Defendants were employees, but in any event, they again cite to no case law to support this proposition and therefore, are not entitled to summary judgment on this basis. Third, they seem to imply that if an act of retaliation could be carried out by a private citizen, then such action is not under color of state law. *Id.* Once again, they cite no case law to support that proposition and thus, are not entitled to summary judgment on that basis. To the extent that they cite to *West v. Atkins*, 487 U.S. 42 (1988), that case does not support this proposition and instead, explains that a defendant's conduct can be "under color of state law" for § 1983's purposes where it is "fairly attributable to the State," *id.* at 49.

Fifth, the Individual Defendants argue that Bascoe, Banks, and Campbell were not acting under color of state law because they did not act in accordance with municipal regulations or policies derived from state law. ECF No. 134 at 54. As for this argument, they offer no admissible evidence to support their contention. *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.,* 164 F.3d 736, 746 (2d Cir. 1998) ("On a summary judgment motion, the district court properly considers only evidence that would be admissible at trial."). Consequently, they are not entitled to summary judgment on that basis. Finally, they argue that Nickoloff and Setel did not act under color of state law because the PAB Board acted via majority vote and therefore, as individuals, they lacked the authority necessary to act under color of state law. ECF No. 134 at 54. They again do not cite any case law to support this proposition and thus are not entitled to summary judgment on this basis.

**3. Municipal Liability**

The City argues that it cannot be held liable for Defendants' actions pursuant to 42 U.S.C. § 1983 under a theory of *respondeat superior*. ECF No. 134 at 52. Plaintiff again responds that he has sufficiently proven municipal liability because the PAB Board was a final policymaker and because of the City's failure to train. ECF No. 125 at 72–74. For the same reasons as discussed in the Court's analysis of Plaintiff's Equal Protection discrimination claim, *see* Part IV Section A.5, the Court concludes that the City is entitled to summary judgment because Plaintiff has failed to proffer evidence sufficient to hold the city liable for his fifth claim pursuant to 42 U.S.C. § 1983.

**C. Sixth Claim: Retaliation in Violation of the First Amendment**

Plaintiff's sixth claim alleges that all Defendants retaliated against him in violation of the First Amendment. ECF No. 28 ¶ 544. Defendants first argue that only Plaintiff's article in *Medium* could constitute protected speech for the purposes of the First Amendment. ECF No. 134 at 57–59. They also argue that they are entitled to summary judgment because (1) the Individual Defendants were not personally involved in the decision to place Plaintiff on administrative leave; (2) none of the Individual Defendants were Plaintiff's employer; (3) the Individual Defendants are entitled to qualified immunity; and (4) Plaintiff cannot prove municipal liability. *Id.* at 55–64.

**1. Protected Speech**

Defendants argue that only Plaintiff's article in *Medium* can constitute protected speech for the purposes of the First Amendment. ECF No. 134 at 57. Therefore, they argue that Plaintiff's May 5 statement to the PAB, other statements or interviews with the media, and his report of Banks' sexual harassment of Pacheco-Walker cannot be the basis for his claim under the First Amendment because he did not speak as a citizen on matters of public concern. *Id.* at 57–59. As an initial note, the Court rejects Defendants' argument as to the statements made to the media and Plaintiff's report of Banks for sexual harassment. Defendants do not identify any specific

statements that Plaintiff made to the media or that Plaintiff made in the report. *Id.* at 58–59. Absent an identification of the specific statements made and an explanation as to why each statement is not a matter of public concern, the Court is unable to discern whether the statements were matters of public concern. Therefore, the Court denies Defendants' request for summary judgment on the issue of whether the media statements and report of Banks' sexual harassment of Pacheco-Walker constituted matters of public concern.

As for Plaintiff's May 5 statement to the PAB, Defendants are entitled to summary judgment to the extent that the Court concludes that the statement is not protected speech for purposes of the First Amendment. Public employees' speech is "protected" under the First Amendment "when they speak as a private 'citizen addressing matters of public concern.'" *Looney v. Black*, 702 F.3d 701, 710 (2d Cir. 2012) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006)). "Public employees speaking 'pursuant to their official duties,' however, are not afforded protections under the First Amendment" because they did not make such speech as a private citizen. *Id.* (quoting *Ross v. Breslin*, 693 F.3d 300, 305 (2d Cir. 2012)). That is, if the public employee's speech "owes its existence to [his] professional responsibilities," it is not protected by the First Amendment. *Garcetti*, 547 U.S. at 421–22; *see also Looney*, 702 F.3d at 712 (holding that the plaintiff's speech was unprotected because he alleged that he "spoke on the[ ] issues because he was in an official position that required, or at least allowed, him to do so" (emphasis omitted)); *Ross*, 693 F.3d at 308 (holding that speech was not protected because it "owed its existence" to the plaintiff's official duties). Phrased differently, the central issue is "the perspective of the speaker—whether the public employee is speaking as a citizen." *Weintraub v. Bd. of Educ.*, 593 F.3d 196, 204 (2d Cir. 2010). This is true even where the subject of the employee's speech is a matter of public concern. *See Ross*, 693 F.3d at 305.

Determining whether a public employee spoke "pursuant to" his official duties "'is not susceptible to a bright line rule.'" *Looney*, 702 F.3d at 711 (quoting *Ross*, 693 F.3d at 306). The inquiry, which is "largely a question of law for the court," *Jackler v. Byrne*, 658 F.3d 225, 237 (2d Cir. 2011), is a "practical one," *Garcetti*, 547 U.S. at 424. The court must examine "the nature of the plaintiff's job responsibilities, the nature of the speech, the relationship between the two" and "[o]ther contextual factors, such as whether the complaint was also conveyed to the public." *Ross*, 693 F.3d at 306.

Here, it is undisputed that the May 5, 2022 statement was made in a private meeting of the PAB. ECF No. 95-4 at 2. At that meeting, Plaintiff gave a speech, part of which was devoted to accusing Wilson of sexually harassing him. Pla. Exh. 13. Before he began speaking about Wilson's alleged sexual harassment, he stated, "[i]f I am going to stay at PAB, we have another issue to address." *Id.* at 17. At the end of the speech, Plaintiff stated "I do not want this to become public. I don't want to file a lawsuit against the City. I don't want to tell my staff about this. I just want this to end." *Id.* at 21. Defendants argue that this demonstrates that the statements were made pursuant to Plaintiff's official duties. ECF No. 134 at 58. In response, Plaintiff proffers no evidence to demonstrate that this statement constituted a matter of public concern. ECF No. 125 at 76. Therefore, the Court agrees with Defendants that it is clear from the statements that from the perspective of the speaker, in this case Plaintiff, he was speaking not as citizen but rather as the Executive Director of the PAB. *See Weintraub*, 593 F.3d at 204. Therefore, the Court concludes that this statement does not constitute a matter of public concern and concludes that it is not protected speech for purposes of the First Amendment.

**2. Personal Involvement**

Defendants argue that none of the Individual Defendants were personally involved in the decision to terminate or suspend Plaintiff. ECF No. 134 at 56. Therefore, they argue that they are

entitled to summary judgment because Plaintiff has not properly proved personal involvement as required by 42 U.S.C. § 1983. *Id.* Defendants make only two statements to support that argument. First, that "[n]one of the Individual Defendants participated in the decision to terminate [Plaintiff's] employment (Def. Fact 45, 46), so summary judgment [is] appropriate on this claim based on his employment discharge." *Id.* Second, that "[t]he Court must also enter summary judgment for Duwaine Bascoe, Natalie Banks, Deborah Campbell, and Shani Wilson on the claim based on his paid suspension because they did not participate in that decision either. Def. Fact 35, 36, 18, 20, 21." *Id.* Summary judgment is not warranted based on these conclusory and undeveloped arguments, especially in this case where Defendants attempt to dismiss claims against Defendants as a whole as opposed to explaining why each individual defendant is entitled to summary judgment.

**3. Not Employer**

Defendants argue that none of the Individual Defendants were Plaintiff's employer and therefore, they are entitled to summary judgment because only employers can take adverse employment actions. ECF No. 134 at 59–62. However, Defendants identify no case law to support the assertion that only employers can take adverse employment actions for purposes of a First Amendment retaliation claim. As such, the Court concludes that they are not entitled to summary judgment on this basis.

**4. Qualified Immunity**

Defendants argue that they are entitled to qualified immunity on this claim. *Id.* at 62. Their only argument to support this contention is that "it has not been clearly established that a subordinate-employee can engage in adverse employment actions against their boss within the context of the boss's First Amendment Retaliation claim." *Id.* (brackets omitted). They then cite to two cases that discuss qualified immunity. *Id.* The conclusory statement that "it has not been

clearly established that a subordinate-employee can engage in adverse employment actions against their boss within the context of the boss's First Amendment Retaliation claim" without more is insufficient to demonstrate that Defendants are entitled to summary judgment on this basis. *Id.*

**5. Municipal Liability**

The City argues that it cannot be held liable for Defendants' actions pursuant to 42 U.S.C. § 1983 under a theory of *respondeat superior*. ECF No. 134 at 63. Plaintiff again responds that he has sufficiently proven municipal liability because the PAB Board was a final policymaker and because of the City's failure to train. ECF No. 125 at 72–73. For the same reasons as discussed in the Court's analysis of Plaintiff's Equal Protection discrimination claim, *see* Part IV Section A.5, the Court concludes that the City is entitled to summary judgment because Plaintiff has failed to proffer evidence sufficient to hold the City liable for his sixth claim pursuant to 42 U.S.C. § 1983.

**D. Fourteenth Claim: Deprivation of Property**

Plaintiff's fourteenth claim alleges that Plaintiff had a property interest in his continued employment as Executive Director of the PAB and that Defendants the City, Wilson, Bascoe, Setel, and Nickoloff deprived him of that property interest without due process of law in violation of the Fourteenth Amendment. ECF No. 28 ¶ 599–600. The City, Wilson, Bascoe, Setel, and Nickoloff argue that they are entitled to summary judgment on this claim because Plaintiff (1) did not have a property interest in continued employment; and (2) has no evidence to demonstrate a policy or custom to establish municipal liability.[5] ECF No. 134 at 83.

**1. Property Interest**

The City, Wilson, Bascoe, Setel, and Nickoloff first argue that Plaintiff did not have a property interest in continued employment as the Executive Director of the PAB. *Id.* at 84–86.

[5] The Individual Defendants also state that they are entitled to summary judgment on this claim because they were not personally involved in Plaintiff's discharge. ECF No. 134 at 83. However, they do not raise any arguments to support this assertion. Therefore, the Court concludes that they are not entitled to summary judgment on this basis.

"The Due Process Clause is violated when a claimant is deprived of a protected liberty or property interest without adequate process." *Tooly v. Schwaller*, 919 F.3d 165, 172 (2d Cir. 2019). "A procedural due process claim requires the plaintiff to establish (1) possession by the plaintiff of a protected liberty or property interest, and (2) deprivation of that interest without constitutionally adequate process." *Id.* at 173. "A public employee has a property interest in continued employment if the employee is guaranteed continued employment absent 'just cause' for discharge." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)).

Here, the City, Wilson, Bascoe, Setel, and Nickoloff argue that Plaintiff did not have a guaranteed right to continued employment because the language of the City Charger states that "[t]he [PAB] Board shall conduct an annual review of the performance of the Executive Director and may remove the Executive Director for good cause." ECF No. 95-9 at 13. Additionally, they argue that the Charter states that the Executive Director "shall serve at the discretion of the Board." *Id.* They argue that this language permits the PAB to fire the Executive Director for good cause but does not require the PAB to have good cause. ECF No. 134 at 85. The Court rejects this argument. The language of the Charter at the very least suggests that Plaintiff could not be terminated without good cause, creating a question of fact as to whether Plaintiff had a continued property interest in his employment. Thus, it should be left to the jury to decide whether Plaintiff was guaranteed continued employment absent "just cause" for discharge and summary judgment is not appropriate on this basis. *See Ciambriello*, 292 F.3d at 313.

**2. Municipal Liability**

The City argues that it cannot be held liable for Defendants' actions pursuant to 42 U.S.C. § 1983 under a theory of *respondeat superior*. ECF No. 134 at 86. Plaintiff again responds that he has sufficiently proven municipal liability because the PAB Board was a final policymaker and

because of the City's failure to train. ECF No. 125 at 72–74. For the same reasons as discussed in the Court's analysis of Plaintiff's Equal Protection discrimination claim, *see* Part IV Section A.5, the Court concludes that the City is entitled to summary judgment because Plaintiff has failed to proffer evidence sufficient to hold the City liable for his fourteenth claim pursuant to 42 U.S.C. § 1983.

**E. Fifteenth Claim: Deprivation of Liberty**

Plaintiff's fifteenth claim alleges that all Defendants deprived him of a liberty interest in violation of the Fourteenth Amendment. ECF No. 28 ¶ 608. Defendants argue that they are entitled to summary judgment because (1) the Individual Defendants lacked the authority to provide due process; (2) the Individual Defendants did not participate in the deprivation; (3) the June 2022 statements were not publicized by the Government; (4) the June and October 2022 statements were not publicized concurrent with Plaintiff's dismissal or effectuated by the same people; and (5) Plaintiff cannot establish municipal liability. ECF No. 134 at 87. The Court addresses each argument below.

**1. Lacked Authority to Provide Due Process**

Defendants argue that they are entitled to summary judgment because none of the Individual Defendants could provide the due process Plaintiff alleged that he is owed. *Id.* at 88. A § 1983 liberty interest claim of this sort, commonly referred to as a "stigma plus" claim, requires a plaintiff to prove (1) the utterance of a statement about him that is injurious to his reputation, "that is capable of being proved false, and that he or she claims is false," and (2) "some tangible and material state-imposed burden . . . in addition to the stigmatizing statement." *Doe v. Dep't of Pub. Safety ex rel. Lee,* 271 F.3d 38, 47 (2d Cir. 2001), *rev'd on other grounds, Conn. Dept. of Pub. Safety v. Doe,* 538 U.S. 1 (2003). The defamatory statement must be sufficiently public to create or threaten a stigma; hence, a statement made only to the plaintiff, and only in private,

ordinarily does not implicate a liberty interest. *See, e.g., Donato v. Plainview-Old Bethpage Cent. Sch. Dist.,* 96 F.3d 623, 631–32 (2d Cir. 1996). Similarly, because "[a] free-standing defamatory statement . . . is not a constitutional deprivation," but is instead "properly viewed as a state tort of defamation," *id.* at 630*,* the "plus" imposed by the defendant must be a specific and adverse action clearly restricting the plaintiff's liberty—for example, the loss of employment or the "termination or alteration of some other legal right or status." *Neu v. Corcoran,* 869 F.2d 662, 667 (2d Cir. 1989).

Here, Defendants argue that they are entitled to summary judgment because they could not provide the due process Plaintiff seeks, *i.e.*, a hearing related to his employment termination. ECF No. 134 at 88. This argument is predicated on the belief that Plaintiff's deprivation of liberty claim arises solely under the theory that he was terminated. Based on the complaint and Plaintiff's filings, that does not appear to be the case.[6] *See* ECF Nos. 28, 125. Because this argument is premised on the erroneous belief that Plaintiff's termination is the only theory upon which Plaintiff bases the claim, the Court concludes that Defendants are not entitled to summary judgment on this claim. To the extent that Defendants invite the Court to enter summary judgment on part of Plaintiff's claim if that claim could stand alone, the Court declines to do so, as Defendants have not explained how each claim could stand alone and why the Court should enter summary judgment on that basis. *See* ECF No. 135 at 46.

**2. Personal Involvement**

Second, Defendants argue that they are entitled to summary judgment because Plaintiff has failed to prove personal involvement, as none of the Individual Defendants had the sole power to terminate Plaintiff. ECF No. 134 at 89. This argument again is premised on the erroneous belief

[6] While Defendants argue that a paid suspension cannot be the basis for this claim, ECF No. 134 at 88, Plaintiff's claim involves more than just the termination and suspension. Therefore, the Court need not address this issue because even assuming that a paid suspension cannot be the basis of this claim, Defendants' argument fails for failure to address the other actions that Plaintiff has cited as related to this claim.

that Plaintiff's termination is the only theory upon which Plaintiff bases the claim. Thus, the Court concludes that for the same reasons as described above, *see* Part IV Section E.1, Defendants are not entitled to summary judgment on this claim.

**3. June 2022 Statement**

Third, Defendants argue that they are entitled to summary judgment as to the June 2022 statement at issue in Plaintiff's deprivation of liberty claim because the statement was not made public until Plaintiff disclosed it. ECF No. 134 at 90. However, in making this argument they cite to no case law or explain what renders a statement public. Absent such case law and an analysis explaining why this statement was not publicized by Defendants under such case law, the Court cannot assess the merits of this argument. As such, the Court concludes that summary judgment is not warranted on this basis.

**4. Concurrent Publication**

Fourth, Defendants argue that only stigmatizing statements concurrent with dismissal of the employee may support a stigma-plus claim. *Id.* at 91. Consequently, they argue that because the June and October 2022 statements occurred five months before Plaintiff's termination, they were not made concurrent with Plaintiff's termination. *Id.* Again, because this argument is premised on the erroneous belief that Plaintiff's termination is the only theory upon which Plaintiff bases the claim, the Court concludes, for the same reasons as described above, see Part IV Section E.1, that Defendants are not entitled to summary judgment on this claim.

**5. Municipal Liability**

The City argues that it cannot be held liable for Defendants' actions pursuant to 42 U.S.C. § 1983 under a theory of *respondeat superior*. *Id.* at 92. Plaintiff again responds that he has sufficiently proven municipal liability because the PAB Board was a final policymaker and because of the City's failure to train. ECF No. 125 at 72–73. For the same reasons as discussed in the

Court's analysis of Plaintiff's Equal Protection discrimination claim, see Part IV Section A.5, the Court concludes that the City is entitled to summary judgment because Plaintiff has failed to proffer evidence sufficient to hold the City liable for his fifteenth claim pursuant to 42 U.S.C. § 1983.

## V. State Law Torts

### A. Defamation Claims

"Defamation is the injury to one's reputation either by written expression, which is libel, or by oral expression, which is slander." *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 456 (S.D.N.Y. 2012) (quotation omitted). Under New York law, to prove defamation, the following elements must be met: "(1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or *per se* actionability." *Palin v. New York Times Co*., 940 F.3d 804, 809 (2d Cir. 2019). The following statements are *per se* defamatory: statements "(i) charging plaintiff with a serious crime; (ii) that tend to injure another in his or her trade, business or profession; (iii) that plaintiff has a loathsome disease; or (iv) imputing unchastity to a woman." *Liberman v. Gelstein*, 80 N.Y.2d 429, 435 (N.Y. 1992).

Plaintiff brings five claims for defamation *per se*: his (1) ninth claim against the City and Campbell; (2) tenth claim against the City and Wilson; (3) eleventh claim against the City, Bascoe, Nickoloff, Setel, and Banks; (4) twelfth claim against the City and Wilson; and (5) thirteenth claim against Banks. ECF No. 28 ¶¶ 557–97. The Court discusses each claim below.

#### 1. Ninth Claim: Defamation *Per Se*

Plaintiff's alleges that on October 12, 2022, Defendants the City and Campbell "drafted and published a statement on May 8, 2022, that stated [Plaintiff] caused such a 'heightened sense of anxiety, apprehension in coming to work, and fear of retaliation'—for both the 'senior staff' of

the PAB and the agency's 30 other 'staff'—that he had to be 'investigated' and 'placed on a paid administrative leave,'" and that this constitutes defamation. ECF No. 28 ¶ 558. Campbell and the City argue that they are entitled to summary judgment for four reasons (i) Campbell believed the statements were true; (ii) Plaintiff cannot establish actual malice; (iii) Campbell had qualified privilege; and (iv) the City cannot be liable because the claim against Campbell fails. ECF No. 135 at 65–71.

***i. Campbell's Belief That Statements Were True***

First, Campbell argues that Plaintiff's ninth claim fails as a matter of law because the allegedly defamatory statements were not false because Campbell believed that her email accurately reflected the Senior Staff member's concerns. ECF No. 134 at 65. In response, Plaintiff argues that Campbell's belief that the statements were true is irrelevant because it does not constitute a showing that the statements were in fact true. ECF No. 125 at 82–83. The Court agrees with Plaintiff.

Under New York law, it is "fundamental that truth is an absolute, unqualified defense to a civil defamation action." *Guccione v. Hustler Mag., Inc.*, 800 F.2d 298, 301 (2d Cir. 1986) (citation omitted). If an allegedly defamatory statement is "substantially true," a claim of libel is "legally insufficient and . . . should [be] dismissed." *Id.* "Substantial truth turns on the understanding of the 'average reader.'" *Meloff v. New York Life Ins. Co.*, 240 F.3d 138, 146 (2d Cir. 2001). New York courts hold that "[a] statement is substantially true if the statement would not 'have a different effect on the mind of the reader from that which the pleaded truth would have produced.'" *Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 366 (S.D.N.Y.1998) (quoting *Fleckenstein v. Friedman*, 266 N.Y. 19, 23 (N.Y. 1934)).

Here, Campbell provides no evidence that the complained-of statements in Plaintiff's ninth claim are substantially true. *See* ECF No. 134 at 65. Instead, she points to evidence from her own

deposition where she states that she believed that the statements were true and argues that based on this belief, she cannot be held liable for defamation. *Id.* However, nowhere does Campbell cite to any case law that suggests that a defendant cannot be liable for defamation solely because she believes that a statement is true. As such, the Court rejects this argument and concludes that Campbell is not entitled to summary judgment on the basis that she believed her statements were true.

***ii. Actual Malice***

Second, Campbell argues that Plaintiff is a public official and therefore, in order to state a claim for defamation, he needs to prove that the statements were made with actual malice. *Id.* at 66. Campbell argues that Plaintiff cannot prove that the statements were made with actual malice and thus, she is entitled to summary judgment on this claim. *Id.* at 69. Plaintiff responds that Campbell's argument fails because he was not a public official. ECF No. 125 at 80.

A person is a public official for the purposes of a defamation suit where he holds a position in government that has "such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees." *Rosenblatt v. Baer*, 383 U.S. 75, 86 (1966). Therefore, the public official "designation applies at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs." *Id.* at 85.

Plaintiff argues that he was not a public official because he was the "non-elected Executive Director of a small arm of City government that had no more than a couple of employees for nearly the entirety of his tenure" and therefore, he "did not have qualifications of importance to the public beyond that of any other government employee." ECF No. 125 at 81. The Court agrees. It is undisputed that Plaintiff was the Executive Director of the PAB from October 2020 until

November 2022 and that the PAB's Board Members possessed the statutory authority to hire, fire, and oversee the daily responsibilities of the PAB's Executive Director. ECF No. 95-2 ¶¶ 13, 15; ECF No. 126 ¶¶ 13, 15. It is also undisputed that the PAB is an office of and within the City municipal government and that PAB Board Members are volunteers, not employees. ECF 95-2 ¶¶ 2–3; ECF No. 126 ¶¶ 2–3. Because Plaintiff was an unelected executive director of an office within the City government, reporting to volunteer board members, the Court concludes that Plaintiff did not possess "apparent importance . . . beyond the general public interest in the qualifications and performance of all government employees." *Rosenblatt,* 383 U.S. at 86; *see also Porcari v. Gannett Satellite Info. Network, Inc.*, 50 A.D.3d 993, 994 (2d Dep't 2008) (holding that an associate corporation counsel was not a public official for purposes of a defamation claim). Consequently, the Court rejects Campbell's argument that because Plaintiff is a public official, he needs to prove that the allegedly defamatory statements were made with actual malice and concludes that Campbell is not entitled to summary judgment on this ground.

***iii. Qualified Privilege***

Third, Campbell argues that she is entitled to summary judgment on Plaintiff's ninth claim because she had a qualified privilege to speak and there was no ill will or high degree of awareness of the probable falsity of her statements. ECF No. 134 at 69–71. In response, Plaintiff argues that there are triable issues of fact as to whether a qualified privilege attaches to Campbell's May 9, 2022 email. ECF No. 125 at 85.

Under New York law, the "common interest privilege" arises "when a person makes a good-faith, *bona fide* communication upon a subject in which he or she has an interest, or a legal, moral or societal interest to speak, and the communication is made to a person with a corresponding interest." *Routh v. Univ. of Rochester*, 981 F. Supp. 2d 184, 213 (W.D.N.Y. 2023) (quoting *Sanderson v. Bellevue Maternity Hosp. Inc.*, 259 A.D.2d 888, 889–90 (3d Dep't 1999)).

This privilege "has been applied to statements among employees of an organization in furtherance of the common interest of their employer." *Id.* (citation omitted).

Nevertheless, a Plaintiff may overcome the qualified privilege by proffering evidence that that a defendant acted with malice. *Id.* Under New York law, either constitutional malice or common-law malice is sufficient to overcome the "common interest privilege." *Liberman*, 80 N.Y.2d at 438. "To demonstrate what has become known as constitutional malice, a plaintiff must show that the defendant acted with knowledge that her statements were false or with reckless disregard of whether they were false, *i.e.,* that the statements were made with a high degree of awareness of their probable falsity or that the defendant entertained serious doubts as to their truth." *Routh*, 981 F. Supp. 2d at 213 (brackets omitted) (quoting *Sanderson.*, 259 A.D.2d at 890). To demonstrate common-law malice, a plaintiff must show "the speaker was motivated solely by spite or ill will." *Id.* (citation omitted).

Here, Campbell argues that Plaintiff has no evidence that she had any awareness that her statements were likely false or had any ill will toward Plaintiff. ECF No. 134 at 71. However, Plaintiff has proffered evidence that Campbell knew the statements were false and/or that she acted solely with spite or ill will. *See* ECF No. 125 at 85. Specifically, Plaintiff points to the email itself, which he argues demonstrates common law malice, as it urged that Plaintiff be subject to adverse employment action. *See* Pla. Exh. 9 at 1. Additionally, Plaintiff points to evidence that Campbell knew her statements in the email were false. *See* Def. Exh. 14 at 68. Therefore, viewing the evidence in the light most favorable to Plaintiff, the Court concludes that there is a genuine dispute of material fact as to whether Campbell acted with actual or common law malice when sending the May 9, 2022 email, precluding summary judgment on the basis that she is entitled to the common interest privilege.

***iv. City's Liability***

Fourth, the City argues that if Campbell is entitled to summary judgment on Plaintiff's ninth claim, it cannot be held liable under a theory of *respondeat superior*, and therefore, the City is also entitled to summary judgment. ECF No. 134 at 71. As the Court has concluded that Campbell is not entitled to summary judgment on Plaintiff's ninth claim, it concludes that the City is also not entitled to summary judgment.

**2. Tenth Claim: Defamation *Per Se***

Plaintiff's tenth claim alleges that Wilson and the City drafted and published a statement on June 7, 2022, that Mr. Reynolds's complaint of sexual harassment and retaliation against Wilson was "unequivocally false" and "retaliatory." ECF No. 28 ¶ 566 (brackets omitted). Wilson and the City argue that they are entitled to summary judgment on this claim for a variety of reasons, including that the claim fails as a matter of law because Wilson's statements were not defamatory. ECF No. 134 at 74. Because the Court agrees that the claim fails as a matter of law because the complained-of statements were not defamatory, the Court will not address the other arguments.

"The New York Court of Appeals has defined a defamatory statement as one that exposes an individual 'to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or induces an evil opinion of one in the minds of right-thinking persons, and deprives one of confidence and friendly intercourse in society.'" *Celle v. Filipino Rep. Enters. Inc.*, 209 F.3d 163, 177 (2d Cir. 2000) (ellipses and brackets omitted) (quoting *Kimmerle v. N.Y. Evening J.*, 262 N.Y. 99, 102 (N.Y. 1933)). When evaluating whether a statement is defamatory, courts must first view the statement in context. *Id.* "Challenged statements are not to be read in isolation, but must be perused as the average reader would against the 'whole apparent scope and intent' of the writing." *Id.* (quoting *November v. Time Inc.*, 13 N.Y.2d 175, 178 (N.Y. 1963)). Second, courts must interpret statements as an ordinary person would. *See November*, 13

N.Y.2d at 178–79. If statements are not "reasonably susceptible of a defamatory meaning, they are not actionable and cannot be made so by a strained or artificial construction." *Golub v. Enquirer/Star Grp., Inc.*, 89 N.Y.2d 1074, 1076 (N.Y. 1997) (citation omitted). Third, the words of the statement "are to be construed not with the close precision expected from lawyers and judges but as they would be read and understood by the public to which they are addressed." *November*, 13 N.Y.2d at 178–79. "It is the meaning reasonably attributable to the intended reader that controls." *Celle*, 209 F.3d at 177–78.

The June 7, 2022 email reads as follows:

> Mr. Dwyer-Reynolds has made allegations against me that are unequivocally false. I am cooperating with the investigation
> and am confident these retaliatory efforts will not impede the PAB's progress in moving forward. I expect all findings to be made public as our community deserves transparency and accountability.
>
> I have been the volunteer chairperson of the Police Accountability Board for more than two years. During that time,
> we worked to launch the PAB despite major obstacles which included an initial lack of funding and institutional support. Despite the obstacles we have encountered, I am proud of what we have accomplished and the team we have assembled to do the people's work.
> I will continue to work with the board, City Council, and staff to make sure Rochester has a highly-functioning agency.

ECF No. 127-63 at 2. Plaintiff argues that Wilson's statements that Plaintiff's allegations are "unequivocally false" and "retaliatory" are defamatory. ECF No. 125 at 87. The Court disagrees.

To the extent that Wilson stated that Plaintiff's allegations are "unequivocally false," such a statement "can only be understood as a specific denial of plaintiff's factual accusations and cannot be construed as defamatory." *Goldman v. Abraham Heschel Sch.*, 227 A.D.3d 544, 545 (2d Dep't 2024); *see also Independent Living Aids, Inc. v. Maxi–Aids, Inc.,* 981 F. Supp. 124, 128 (E.D.N.Y. 1997) (holding that where a statement can only be understood as a denial of accusations, such a statement cannot be construed as defamatory as a matter of law). To the extent that Wilson implied that Plaintiff's allegations were "retaliatory," even in conjunction with the statement that

his allegations were "unequivocally false," such a statement does not expose Plaintiff "to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace" such that it is defamatory. *Celle*, 209 F.3d at 177. As such, the Court concludes that Wilson's statements as complained of in Plaintiff's tenth claim are not defamatory as a matter of law and that Wilson and the City are entitled to summary judgment on this claim.

### 3. Eleventh Claim: Defamation *Per Se*

Plaintiff's eleventh claim alleges that Defendants the City, Bascoe, Nickoloff, Setel, and Banks drafted and published a press release titled "PAB Calls for State Investigation into Former Executive Director," which was issued on October 12, 2022. ECF No. 28 ¶ 574. Specifically, Plaintiff claims that the statement within the press release that he had committed "crimes" of "collusion and interference with a governmental investigation" by "holding alleged meetings with current and former PAB staff, members of the Police Accountability Board Alliance, and others including a meeting at his home this past weekend with former staff and other parties" was defamatory. *Id.* ¶ 575 (brackets omitted). The City, Bascoe, Nickoloff, Setel, and Banks argue that they are entitled to summary judgment on this claim for numerous reasons, including that Plaintiff's notice of claim was untimely. ECF No. 134 at 76. Because the Court agrees that they are entitled to summary judgment on the basis that Plaintiff's notice of claim was untimely as to his eleventh claim, the Court will not discuss the other arguments.

Section 50-e of the New York General Municipal Law provides that to proceed on a state tort action "against [a] New York municipal entit[y] or their employees acting within the scope of their employment," a notice of claim must be filed "within ninety days of the incident giving rise to the claim." *Grantley v. City of New York*, No. 12-CV-8294, 2013 WL 6139688, at *3 (S.D.N.Y. Nov. 21, 2013) (citing N.Y. Gen. Mun. Law §§ 50-e, 50-i). "The general rule is that in a federal court, state notice-of-claim statutes apply to state-law claims." *Christian v. Town of Riga*, 649 F.

Supp. 2d 84, 92 (W.D.N.Y. 2009) (brackets omitted) (citing *Felder v. Casey*, 487 U.S. 131, 151 (1988)). Moreover, the law is clear that "[t]he notice of claim requirements apply equally to state tort claims brought as pendent claims in a federal civil rights action." *Warner v. Vill. of Goshen Police Dep't.*, 256 F. Supp. 2d 171, 175 (S.D.N.Y. 2003). "Notice of claim requirements 'are construed strictly by New York state courts.'" *Hardy v. N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999) (quotation omitted). Therefore, "[f]ailure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action." *Id.* at 794 (citing *Brown v. Metro. Transp. Auth.*, 717 F. Supp. 257, 259 (S.D.N.Y. 1989)).

Here, the City, Bascoe, Nickoloff, Setel, and Banks argue that because the press release at issue was issued on October 12, 2022, the incident giving rise to Plaintiff's eleventh claim occurred on October 12, 2022. ECF No. 134 at 77. Therefore, Plaintiff would have needed to file the notice of claim by January 10, 2023. *Id.* However, Plaintiff did not file the notice of claim related to this claim until February 8, 2023, making his notice of claim untimely. *Id.* In response, Plaintiff argues that he satisfied the notice of claim requirement because Defendants had actual knowledge of the press release. ECF No. 125 at 89.

The Court agrees with the City, Bascoe, Nickoloff, Setel, and Banks that Plaintiff's eleventh claim must be dismissed for failure to timely file a notice of claim. Plaintiff's claim arose on October 13, 2022, when the press release was issued, Pla. Exh. 6, and Plaintiff's notice of claim as to the press release was filed on February 8, 2023, Pla Exh. 1 at 5. Therefore, Plaintiff failed to timely file a notice of claim as to the eleventh claim. To the extent that Plaintiff argues that the City had actual notice of his claim, such an argument is only relevant when determining whether to permit late service of a notice of claim. *See Quiles v. Suffolk Cnty. Comty. Coll.*, No. CV 02-2399, 2005 WL 8161194, at *8 (E.D.N.Y. Sept. 28, 2005). Plaintiff has not made an application to this Court to permit late service, nor could he, as this Court does not have jurisdiction to entertain

such an application. *See* N.Y. Gen. Mun. Law § 50-e(7) (stating that "[a]ll applications under [§ 50–e] shall be made to the supreme court or to the county court."). As such, the Court concludes that the City, Bascoe, Nickoloff, Setel, and Banks are entitled to summary judgment on Plaintiff's eleventh claim.

**4. Twelfth Claim: Defamation *Per Se***

Plaintiff's twelfth claim is for defamation against the City and Wilson. This claim alleges that Wilson repeatedly stated that Plaintiff was a "narcissistic abuser." ECF No. 28 ¶ 583. The City argues that it is entitled to summary judgment because it cannot be held liable for a statement made by Wilson because she was an unpaid/volunteer PAB member, and therefore, not an employee of the City. ECF No. 134 at 79. Alternatively, it argues that if the Court concludes that Wilson is an employee, the City cannot be held liable for her statements because they were made outside the scope of her employment. *Id.* Plaintiff does not respond to this argument, and instead, argues that Defendants conceded that Wilson's comment that Plaintiff was a "narcissistic abuser" was actionable in its discussion of Plaintiff's tenth claim. ECF No. 125 at 86.

When a party is counseled, a court may infer from a party's partial opposition—*i.e.*, a response that references some claims or defenses but not others—that relevant claims or defenses not defended in the opposition have been abandoned. *See Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014). Here, Plaintiff is counseled and did not defend his twelfth claim as to the City. *See* ECF No. 125. Consequently, the Court considers the twelfth claim to be abandoned as to the City, and concludes that the City is entitled to summary judgment on this claim. As for Wilson, she did not move for summary judgment on this claim. Therefore, the claim against Wilson remains. Nevertheless, because Plaintiff included his argument related to Wilson's statement that he is a "narcissistic abuser" in his discussion of his tenth claim, the Court wishes to clarify that Plaintiff

only included the language "narcissistic abuser" in his twelfth claim and thus, the Court considers any claim related to that language brought pursuant to his twelfth claim. *See* ECF No. 28 ¶ 583.

**5. Thirteenth Claim: Defamation *Per Se***

Plaintiff's thirteenth claim alleges defamation *per se* against Banks related to her statement that "[t]his investigation has revealed [Plaintiff] to be the dishonest, manipulative, vindictive person his ENTIRE senior staff had numerous complaints about." *Id.* ¶ 591. This statement was made on November 16, 2022, in a Facebook post. *See* ECF No. 127-65. Banks argues that she is entitled to summary judgment because (i) Plaintiff failed to file a timely notice of claim; (ii) the statement constituted opinion; (iii) the statement was substantially true; and (iv) Plaintiff cannot demonstrate actual malice.[7] ECF No. 134 at 80–83. The Court discusses each argument below.

***i. Notice of Claim***

First, Banks argues that this claim must be dismissed for failure to timely file a notice of claim. *Id.* at 80. Plaintiff responds that because this claim was only brought against Banks as an individual, no notice of claim was required. ECF No. 125 at 91. As discussed above, § 50-e of the New York General Municipal Law provides that to proceed on a state tort action "against [a] New York municipal entit[y] or their employees acting within the scope of their employment," a notice of claim must be filed "within ninety days of the incident giving rise to the claim." *Grantley,* 2013 WL 6139688, at *3.

Here, Banks argues that because she is an employee of the City, Plaintiff needed to file a notice of claim. ECF No. 134 at 80. However, as Plaintiff notes, a plaintiff need only file a notice of claim where the employe was acting within the scope of their employment. ECF No. 125 at 91. Here, the defamation claim relates to Banks' personal Facebook post, and Banks proffers no

[7] The City also argues that it is entitled to summary judgment on this claim. ECF No. 134 at 83. However, Plaintiff has not brought this claim against the City. *See* ECF No. 28 ¶ 583. As such, the Court need not address this argument.

evidence that she was acting within the scope of her employment when making this Facebook post. *See* ECF No. 134. Indeed, Banks does not even argue that she was acting within the scope of her employment when making the Facebook post. As such, the Court concludes that Banks is not entitled to summary judgment on the basis that Plaintiff did not file a notice of claim.

***ii. Opinion***

Second, Banks argues that she is entitled to summary judgment on Plaintiff's thirteenth claim because her Facebook post was her opinion, which does not constitute defamation. *Id.* at 81. "Whether a statement constitutes a protected opinion or actionable fact depends on the content of the communication as a whole, its tone and apparent purpose." *Dfinity Found. v. New York Times Co.*, 702 F. Supp. 3d 167, 174 (S.D.N.Y. 2023) (quotation marks and citations omitted). The Court considers four factors when deciding whether a statement is protected opinion or actionable defamation: (1) "whether the specific language in issue has a precise meaning which is readily understood or whether it is indefinite and ambiguous," (2) "whether the statement is capable of being objectively characterized as true or false," (3) "an examination of the full context of the communication in which the statement appears," and (4) "a consideration of the broader social context or setting surrounding the communication including the existence of any applicable customs or conventions which might signal to readers or listeners that what is being read or heard is likely to be opinion, not fact." *Celle*, 209 F.3d at 178–79 (quotation omitted).

Banks' post stated:

> FINALLY, The independent investigation into the Police Accountability Board's Executive Director [Plaintiff] is over! I have so much to say, now that I/we can finally speak. It has been a long and very stressful 6 months. We were ordered NOT to speak on any of it, until the investigation concluded and I am happy to say that it has. This investigation has revealed [Plaintiff] to be the dishonest, manipulative, vindictive person his ENTIRE senior staff had numerous complaints about. We, the senior staff who reported him back in May 2022 for multiple acts a [sic] City policy violations, retaliation, racism and sexism finally feel vindicated. I have a lot more to say on this, but I need to collect my thoughts first. The full report can be [found] here: [link to investigative report.]"

ECF No. 127-65 at 2. Banks argues that her post constituted opinion because it (1) was made on her personal Facebook account; (2) she stated that "I have a lot more to say on this but I need to collect my thoughts first," which she argues is an express statement that she was sharing her feelings and opinions; and (3) she linked to the investigation report and disclosed her prior complaints about Plaintiff, demonstrating that she was sharing the facts underlying her opinion that Plaintiff is "dishonest, manipulative [and] vindictive." ECF No. 134 at 81. Simply put, these arguments, without more, are insufficient to warrant summary judgment. Nowhere does Banks explain how these arguments are relevant to the Court when assessing the factors used to determine whether a statement is protected opinion or actionable facts, and the Court bears no responsibility to further develop this argument on Banks' behalf. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones."). Thus, the Court concludes that Banks is not entitled to summary judgment on this basis.

***iii. Truth of the Statements***

Third, Banks argues that she is entitled to summary judgment on Plaintiff's thirteenth claim because the statement she made in her Facebook post was substantially true. ECF No. 134 at 82. Plaintiff's thirteenth claim only challenges the statement, "This investigation has revealed [Plaintiff] to be the dishonest, manipulative, vindictive person his ENTIRE senior staff had numerous complaints about." ECF No. 28 ¶ 591. Banks' only arguments related to this statement are that (1) the statement is substantially true because Banks considered Plaintiff to be dishonest and manipulative due to his misrepresentation of her statements to Pacheco-Walker; and (2) because Banks considered Plaintiff to be vindictive due to his attempts to retaliate against people. ECF No. 134 at 82. To support this argument, Banks points to evidence from her own deposition where she states that she believed that the statements were true and argues that based on this belief,

she cannot be held liable for defamation. *See id.* As discussed more fully above, *see* Part V Section A.1.i, the argument that a defendant cannot be liable for defamation solely because she believes that a statement is true is meritless. Therefore, the Court concludes that Banks is not entitled to summary judgment on this basis.

***iv. Actual Malice***

Fourth, Banks argues that she is entitled to summary judgment on this claim because Plaintiff's role as Executive Director of the PAB rendered him a public official, and therefore, Plaintiff must prove that Banks acted with actual malice, which he is unable to do. ECF No. 134 at 83. As explained above, *see* Part V Section A.1.ii, Plaintiff's role as Executive Director of the PAB did not render him a public official, and thus, Plaintiff is not required to prove that Banks acted with actual malice. Consequently, Banks is not entitled to summary judgment on this basis.

**B. Sixteenth Claim: Intentional Infliction of Emotional Distress**

Plaintiff's sixteenth claim is for intentional infliction of emotional distress against all Defendants. ECF No. 28 ¶ 619. Defendants argue that they are entitled to summary judgment because (1) some of the claims fall outside of the statute of limitations; (2) the claim is duplicative of Plaintiff's defamation claims; and (3) the complained-of conduct does not exceed all bounds of decent society. ECF No. 134 at 100–02. The Court discusses each argument below.

**1. Statute of Limitations**

Defendants argue that under New York law, the statute of limitations for an intentional infliction of emotional distress claim is one year. *Id.* at 100. Because Plaintiff's complaint was filed on August 30, 2023, they argue that any claims prior to August 30, 2022, cannot be the basis for Plaintiff's intentional infliction of emotional distress claim. *Id.* In response, Plaintiff argues that the continuing tort doctrine allows Plaintiff to rely on wrongful conduct occurring more than

one year prior to the commencement of the action as long as the final actionable event occurred within the statute of limitations. ECF No. 125 at 99–100.

The general rule for accrual of an intentional infliction of emotional distress claims is that conduct occurring more than one year before filing cannot form the basis for a claim. *Weisman v. Weisman*, 108 A.D.2d 853, 854 (2d Dep't 1985). Nevertheless, courts have recognized a limited "continuing wrongs" exception for a course of conduct which originates more than one year before filing and continues to a date within with the one-year limitations period. *See Drury v. Tucker*, 210 A.D.2d 891, 892 (4th Dep't 1994). "Furthermore, for the statute of limitations to be tolled under the theory of continuing wrongs, the acts within the statute of limitations must be sufficient to make out a claim for intentional infliction of emotional distress, independent of those acts that are part of the offending course of conduct but fall outside the time bar." *Santan-Morris v. New York Univ. Med. Ctr.*, No. 96 CIV. 0621, 1996 WL 709577, at *5 (S.D.N.Y. Dec. 10, 1996) (quotation marks and citation omitted).

Here, there is no dispute that some of the conduct complained-of in Plaintiff's intentional infliction of emotional distress claim occurred within one year of the filing of Plaintiff's Complaint. *See* ECF No. 134 at 100. However, neither party proffers any evidence to support their arguments, and consequently, the Court is unable to determine the merits of their arguments. As such, the Court concludes that summary judgment is not warranted on this basis at this time.

**2. Duplicative**

Defendants' second argument is that Plaintiff's claim for an intentional infliction of emotional distress is duplicative of his defamation claims and therefore, must be dismissed. *Id.* at 100. Defendants' substantive argument consists of two sentences. First, that "[Intentional infliction of emotional distress] claims fail when they duplicate or fall within the ambit of other torts." *Id.* (quotation omitted). And second, that "[Plaintiff], therefore, impermissibly bases his [intentional

infliction of emotional distress] claim on defamatory statements made by Individual Defendants." *Id.* Summary judgment is not warranted on the basis of this conclusory and unsupported argument, especially considering that Plaintiff's claim for intentional infliction of emotional distress is premised on more than merely defamatory statements as articulated in his Complaint. *See* ECF No. 28 ¶¶ 618–19. Nowhere do Defendants explain why they believe Plaintiff's claim is duplicative of Plaintiff's defamation claims or even mention the other actions upon which Plaintiff bases this claim. As such, the Court concludes that Defendants are not entitled to summary judgment on this basis.

**3. Outrageous and Extreme Conduct**

Defendants' third argument is that the complained-of actions fail to satisfy New York's high bar of outrageous and extreme conduct. ECF No. 134 at 101. Under New York law, the tort of intentional infliction of emotional distress has four elements: (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress. *See Howell v. New York Post Co.*, 81 N.Y.2d 115, 121 (N.Y. 1993). Furthermore, "New York sets a high threshold for conduct that is extreme and outrageous enough to constitute intentional infliction of emotional distress." *A.M. ex rel. J.M. v. NYC Dep't of Educ.*, 840 F. Supp. 2d 660, 690 (E.D.N.Y. 2012) (quotation omitted). The conduct at issue must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999) (quoting *Howell*, 81 N.Y.2d at 122).

Here, Defendants first argue that they are entitled to summary judgment because defamatory statements generally fail to constitute "extreme and outrageous conduct." ECF No. 134 at 101. As the Court explained above, Plaintiff's claim for intentional infliction of emotional distress is premised on more than defamatory statements. *See* ECF No. 28 ¶¶ 618–19. Thus, the

Court rejects this argument. To the extent that Defendants argue that the claim for intentional infliction of emotional distress must be dismissed to the extent it is premised on acts of defamation, the Court also rejects that argument. Defendants cite to case law supporting the proposition that defamation claims generally fail to constitute "extreme and outrageous conduct," but fail to explain why the defamatory statements in this case fall into that general rule. ECF No. 134 at 101. Because Defendants fail to articulate why the specific statements at issue cannot be the basis for Plaintiff's intentional infliction of emotional distress claim, the Court concludes that Defendants are not entitled to summary judgment on this basis.

Second, Defendants argue that "[b]ecause each Individual Defendants' *own actions* fail to rise to the level of extreme and outrageous conduct, the Court must enter summary judgment." *Id.* at 102 (emphasis in original). To support this argument, Defendants cite to *Stuto* for the proposition that to prove his claim, Plaintiff would need to prove that Defendants acted together and not in a separate or unrelated manner. *Id.* at 101. Specifically, Defendants point to the court's assertion in *Stuto* that the cases cited by the plaintiff in that case "all involved some combination of public humiliation, false accusations of criminal or heinous conduct, verbal abuse or harassment, physical threats, permanent loss of employment, or conduct contrary to public policy." 164 F.3d at 828. Contrary to Defendants' argument, this statement and the *Stuto* decision as a whole do not support the proposition that Defendants have to act together to state a claim for intentional infliction of emotional distress. Instead, the court in that case was simply distinguishing the facts of that case from other cases cited by the Plaintiff. *See id.* Further, when the court was referencing a "combination," it was referencing a combination of acts, not a combination of defendants working together. *See id.* Because Defendants point to no relevant case law to support their argument that Defendants' own actions fail to rise to the level of extreme and outrageous conduct, the Court concludes that they are not entitled to summary judgment on this basis.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (ECF No. 95) is GRANTED IN PART AND DENIED IN PART. Summary judgment is DENIED as to Plaintiff's first, third, fourth, seventh, eighth, ninth, thirteenth, and sixteenth claims. Summary judgment is GRANTED as to Plaintiff's tenth and eleventh claims for defamatory *per se* and those claims are DISMISSED.

As for the following claims, summary judgment is granted to the extent described by the Court but is otherwise is denied. Specifically, summary judgment is GRANTED as to Plaintiff's second claim against Wilson to the extent that it is based on sexual orientation discrimination. Summary judgment is GRANTED as to Plaintiff's second, fifth, sixth, twelfth, fourteenth, and fifteenth claims to the extent that these claims are brought against the City. Summary judgment is GRANTED as to Plaintiff's sixth claim to the extent that the Court concludes that Plaintiff's May 5 statement to the PAB is not protected speech for purposes of the First Amendment. The Court sets a status conference on **October 21, 2026, at 11:30am** to hear from the parties about the progress of this action.

IT IS SO ORDERED.

Dated: September 29, 2026.
Rochester, New York

HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York